SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Jeri Leigh Miller (24102176)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:   (214) 981-3300
Facsimile:   (214) 981-3400
Email:       tom.califano@sidley.com
             rpatel@sidley.com
             jeri.miller@sidley.com

SIDLEY AUSTIN LLP
Andres Barajas (*pro hac vice* pending)
Weiru Fang (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:   (212) 839-5300
Facsimile:   (212) 839-5599
Email:       andres.barajas@sidley.com
             weiru.fang@sidley.com

*Proposed Attorneys for the Debtors
and Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| EBIX, INC., *et al.*[1] | Case No. 23-80004 (SWE) |
| Debtors. | (Joint Administration Requested)<br>(Emergency Hearing Requested) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ebix, Inc. (1975), Vertex, Incorporated (6295), P.B. Systems, Inc. (9074), Ebix Consulting, Inc. (6666), Ebix US, LLC (N/A), Facts Services, Inc. (1348), Doctors Exchange, Inc. (N/A), Ebix International LLC (N/A), Agency Solutions.com, LLC d/b/a Health Connect LLC (N/A), ConfirmNet Corporation (2737), A.D.A.M., Inc. (8070), and Ebix Latin America, LLC (N/A). The Debtors' mailing address is 1 Ebix Way, Johns Creek, Georgia 30097.

**DEBTORS' EMERGENCY MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE DEBTORS TO
(A) PAY CRITICAL VENDOR CLAIMS, AND (B) SATISFY
CERTAIN CUSTOMER OBLIGATIONS; (II) CONFIRMING
ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING
PURCHASE ORDERS; AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than December 19, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on Tuesday, December 19, 2023, at 3:00 p.m. (CT) in Courtroom #3, 14th Floor, 1100 Commerce Street, Dallas, TX 75242-1496. You may participate in the hearing by an audio and video connection only.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 1-650-479-3207. Video communication will be by the use of the Cisco WebEx platform. Connect via the Cisco WebEx application or click the link on Judge Everett's home page. The meeting code is 476 420 189. Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of electronic hearings. To make your appearance, click the "Electronic Appearance" link on Judge Everett's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Ebix, Inc. and its debtor affiliates as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, hereby submit this motion (this "Motion"). In support of this Motion, the Debtors submit the *Declaration of Amit K. Garg, Chief Financial Officer of Ebix, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.[2] In further support of this Motion, the Debtors state as follows:

**RELIEF REQUESTED**

1. By this Motion, the Debtors seek entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, granting, among other things, the following

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

2

relief: (i) authorizing the Debtors to (a) pay Critical Vendor Claims (as defined below), and (b) satisfy certain Customer Obligations (as defined below); (ii) confirming the administrative priority of all undisputed obligations of the Debtors for postpetition goods and services ordered under prepetition purchase orders and authorizing the payment of such obligations in the ordinary course; and (iii) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3. The legal predicates for the relief requested herein are sections 105(a), 363, 503(b), and 507 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. The Debtors confirm their consent to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

5. Ebix, Inc., along with its affiliated debtors and debtors in possession, is a leading international provider of a variety of technology services, focusing on the insurance, financial services, travel, and healthcare industries. The Debtors' main focus is to design and deploy a wide variety of insurance and reinsurance exchanges on an on-demand basis using software-as-a-service

enterprise solutions in areas of customer relationship management, front-end and back-end systems, and outsourced administrative and risk compliance.

6.  On December 17, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under sections 101–1532 of the Bankruptcy Code in this Court. Additional information regarding the Debtors' business, capital structure, and the circumstances preceding the Petition Date may be found in the First Day Declaration.

## THE CRITICAL VENDOR CLAIMS AND THE CUSTOMER OBLIGATIONS

**I.  Critical Vendor Claims.**

7.  As a leading international supplier of on-demand infrastructure software exchanges and e-commerce services to the insurance, financial, and healthcare industries, the Debtors operate a diversified set of technology platforms and services for their clients. The complexity of the Debtors' business requires seamless collaboration with various third-party vendors, suppliers, and services providers that provide goods and services necessary for the continuation of the Debtors' operations (collectively, the "Vendors"). Among other things, the Vendors assist the Debtors with incorporating data into the Debtors' products, creating cloud services for customer products, providing analytics and technology in support of the Debtors' operations, printing and delivering customer products, and operating data centers. As of the Petition Date, the Debtors owe approximately $7.5 million to their Vendors.

8.  With the assistance of their advisors, the Debtors have spent, and will continue to spend, significant time reviewing and analyzing their accounts payable, customer order trends, and other books and records, consulting operations managers and purchasing personnel, reviewing purchase orders, Vendor arrangements, and other supply agreements, and analyzing historical practice to identify critical goods or services, hard-to-replace suppliers of those goods or services, and other essential business relationships, the loss of which would irreparably harm their

4

businesses and warrant the extraordinary relief requested herein. The Debtors' evaluation centered on whether loss of a Vendor and the goods or services they supply would likely result in the cancellation or revocation of a material number of customer orders, shrink the Debtors' market share, reduce enterprise value, and ultimately impair the Debtors' viability as a going-concern. The factors for evaluation include:

a. whether a Vendor is a sole-source, limited-source, or high-volume supplier of goods or services critical to the Debtors' business operations;

b. the volume of goods or services expected to be delivered by the Vendor during these chapter 11 cases;

c. whether an agreement exists by which the Debtors could compel a Vendor to continue performing on prepetition terms;

d. whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

e. whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining goods or services from alternative sources;

f. the degree to which replacement costs (including, pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a Vendor's prepetition claim;

g. whether the Debtors' inability to pay all or part of the Vendor's prepetition claim could trigger financial distress for the applicable Vendor;

h. the likelihood that a temporary break in the Vendor's relationship with the Debtors could be remedied through use of the tools available in these chapter 11 cases;

i. whether failure to pay all or part of a particular Vendor's claim could cause the Vendor to hold goods owned by the Debtors, or refuse to ship inventory or to provide critical services on a postpetition basis;

j. the location and nationality of the Vendor; and

5

        k.      whether failure to pay a particular Vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

9. Following this analysis, the Debtors have and will continue to identify a pool of Vendors (collectively, the "Critical Vendors") with outstanding prepetition claims (the "Critical Vendor Claims") that they believe must be satisfied to preserve the value of the Debtors' estates. The Debtors' failure to pay these Critical Vendor Claims may result in Critical Vendors halting work for, or delaying deliveries to, the Debtors. In particular, certain of the Critical Vendors themselves face financial hardship, such that they may go out of business if the Debtors fail to satisfy the Critical Vendor Claims. Other Critical Vendors may have no available replacement, or they provide goods and services to the Debtors at a discount rate, such that switching to an alternative vendor would increase the Debtors' cost. And, even where there may be an alternative, attempting to procure critical services from alternative suppliers would impose a severe strain on the Debtors' management and operations at a time when the Debtors should be focused on shepherding the business through chapter 11 and shoring up relationships with their existing vendors and customers. Also, the Debtors interact with the Critical Vendors pursuant to a variety of arrangements, including arrangements that may not be executory in nature, such that the Critical Vendor may not agree to continue to do business with the Debtors, and would be under no obligation to do so, unless paid on account of prepetition amounts due from the Debtors. Finally, some of the Critical Vendor Claims may be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code, or the Critical Vendors may be able to assert liens on the goods in their possession or on the property they improved to secure payment.

10. Accordingly, the Debtors seek authorization, but not direction, to pay Critical Vendor Claims up to an aggregate amount of $2,200,000. The Debtors will pay Critical Vendor Claims <u>solely</u> where payment is, in the Debtors' discretion, necessary or appropriate to maintain

reliable, efficient, and smooth operations or induce the holders of Critical Vendor Claims to continue performing or otherwise support the Debtors on a postpetition basis.

**II.    Customary Trade Terms.**

11.   As a condition to receiving payment on account of the Critical Vendor Claims, the Debtors may require such Critical Vendors to: (a) continue supplying goods and services to the Debtors on trade terms that are at least as favorable to the Debtors as those in effect prior to the Petition Date; and (b) agree that they shall not be permitted to cancel any contract or agreement pursuant to which they provide services to the Debtors (collectively along with any other terms, the "Agreed Terms"); *provided* that the Debtors continue to pay for such goods and services and are not otherwise in breach of such contract or agreement.  The Debtors may seek such agreement in writing in advance of any payment on a Critical Vendor Claim (which may be agreed to via email between the Critical Vendor and the Debtors (or their respective counsel)).  The Debtors reserve the right to require more favorable trade terms from any Critical Vendor as a condition to payment of any prepetition claim.

12.   If any Critical Vendor accepts payment for a prepetition obligation of the Debtors premised on compliance with the above conditions, and thereafter fails to comply with the Agreed Terms, the Debtors request that such payment be deemed an avoidable postpetition transfer under section 549 of the Bankruptcy Code, and that such Critical Vendor be required to immediately repay the Debtors any payment made on account of its asserted claim to the extent the aggregate amount of such payments exceeds the postpetition obligations then outstanding, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims or otherwise.

**III.    Payment of Outstanding Purchase Orders.**

13.    Prior to the Petition Date and in the ordinary course of business, the Debtors may have ordered goods or services that will not be delivered until after the Petition Date (collectively, the "Outstanding Purchase Orders").  To avoid the risk of becoming general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) or provide services with respect to such Outstanding Purchase Orders unless the Debtors issue substitute purchase orders postpetition.  Receiving delivery or services on account of the Outstanding Purchase Orders is critical to preventing any disruption to the company's business operations.  To prevent disruption to the Debtors' business operations, the Debtors seek an order (a) granting administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code to all undisputed obligations of the Debtors arising from the acceptance of goods or services subject to Outstanding Purchase Orders and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

**IV.    Customer Refund and Promotion Obligations.**

14.    Separately from their Vendor obligations, the Debtors have certain obligations to their customers which may implicate prepetition amounts due.

15.    In particular, the Debtors' Oakstone continuing medical education ("CME") business historically maintained a sales promotion to incentivize customers to purchase CME subscriptions by offering them gift cards as a partial return of their subscription purchase price (the "Sales Promotion").  As of the Petition Date, the Debtors estimate that approximately $202,000 remains outstanding on account of prepetition obligations under the Sales Promotion (the "Sales Promotion Obligations").  Although the Debtors discontinued the Sales Promotion going forward in November of 2023, the Debtors' ability to satisfy their existing Sales Promotion Obligations is

critical to preserving the goodwill of their customer base and to incentivize them to continue to renew their CME subscriptions.

16. In addition, the Debtors historically have accepted pre-payment from customers for services, and provided refunds (the "Refund Obligations" and together with the Sales Promotion Obligations, the "Customer Obligations") to certain customers in certain circumstances, including in the situation where customers may pre-pay for certain offerings that are either not offered or not needed. While the granting of a refund is highly discretionary, in certain circumstances the Debtors believe that it maximizes value by building goodwill with their customers and incentivizing future purchases.

17. Accordingly, the Debtors seek authorization, but not direction, to honor the Customer Obligations consistent with past practice on a postpetition basis. The Debtors will satisfy Customer Obligations solely where it is, in the Debtors' discretion, necessary to maximize the value of their estates for the benefit of all stakeholders.

**BASIS FOR RELIEF REQUESTED**

I. **Extraordinary Circumstances Exist to Warrant Payment of the Critical Vendor Claims and Satisfaction of the Customer Obligations, And Payment is Warranted Under Section 363(b)(1) of the Bankruptcy Code, the Doctrine of Necessity, and As a Valid Exercise of the Debtors' Fiduciary Duties.**

18. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Under section 363(b) of the Bankruptcy Code, courts require only that a debtor "show that a sound business purpose justifies such actions." *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) (quotation omitted). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to

9

the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

19. Further, section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the Court, empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of the Critical Vendor Claims under the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (citing payment of foreign creditor's prepetition claim as an example of the doctrine of necessity). The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

20. And, under sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *CoServ*, 273 B.R. at 497 (citations omitted). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.* The *CoServ* court noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "by the preplan satisfaction of a prepetition claim." *Id.* That court specifically stated that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the

10

payment was to "sole suppliers of a given product." *Id.* at 497-98. The bankruptcy court provided a three-pronged test to determine whether a preplan payment on account of a prepetition claim is a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

21. Payment of the Critical Vendor Claims is a sound exercise of the Debtors' business judgement and extraordinary relief is warranted in granting payment of such claims. As described above, the Debtors seek authority, but not direction, to pay Critical Vendor Claims solely where the Critical Vendor Claims are held by Vendors that provide the Debtors goods and services necessary to run their business, which the Debtors cannot easily or inexpensively replace, if at all. As noted, the Debtors believe that failure to pay Critical Vendor Claims may result in Critical Vendors halting work for, or delaying deliveries to, the Debtors, which may severely disrupt the Debtors' business. Any disruption to services due to the inability or time required to find a replacement vendor would affect the Debtors' ability to attract and maintain customers and erode the value of their estates.

22. Additionally, some of the Critical Vendor Claims may be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code. 11 U.S.C. § 503(b)(9). These claims must be paid in full for the Debtors to confirm a chapter 11 plan. *See id.* § 1129(a)(9)(A). Or, the holders of Critical Vendor Claims may be able to assert liens on the goods in their possession or on the property they improved to secure payment. Therefore, payment of the Critical Vendor Claims would not materially prejudice any parties in interest, as payment at the outset of these

chapter 11 cases accelerates the timing of payment but is not expected to change the ultimate treatment of such claims.

23.  Similarly, satisfaction of the Customer Obligations is a sound exercise of the Debtors' business judgement and warranted. The Debtors seek authority, but not direction, to honor the Customer Obligations solely where, in their business judgement, failure to do so would negatively impact the value of their estates, for instance due to ill-will from customers or negative publicity.

24.  Finally, failure to satisfy the Critical Vendor Claims and Customer Obligations could damage the Debtors' going concern value by undermining the "business as usual" message that serves as a cornerstone to these chapter 11 cases.

25.  Accordingly, there are extraordinary circumstances which justify the relief requested herein: namely to avoid damage to the Debtors' businesses and ensure a timely restructuring process. Accordingly, the relief requested herein is in the best interest of their estates, creditors, and other parties in interest and should be approved.

## II. The Outstanding Purchase Orders Should Be Entitled to Administrative Expense Priority.

26.  Pursuant to section 503(b)(l) of the Bankruptcy Code, obligations that are in connection with the postpetition delivery of goods and services, including goods and services ordered prepetition, are in fact administrative expense priority claims because they benefit the estate postpetition. *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses). The granting of the relief sought herein with respect to the Outstanding Purchase Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted, and will not prejudice any other party in interest.

27. Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Purchase Orders to provide certain Vendors with assurance of such administrative priority. The accompanying disruption to the continuous and timely flow of critical services and other goods to the Debtors would potentially force the Debtors to halt operations, disrupting the Debtors' businesses and lead to a loss of revenue all to the detriment of the Debtors and their creditors. Accordingly, the Debtors request that the Court confirm the administrative expense priority status of the Outstanding Purchase Orders and authorize the Debtors to pay the Outstanding Purchase Orders in the ordinary course of business.

## PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS

28. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, access to cash collateral, and debtor-in-possession financing. Based on the cash management system, the Debtors also believe that checks or electronic fund transfer requests, other than those relating to authorized payments, will not be honored inadvertently. The Debtors request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or electronic fund transfer requests in respect of the relief requested in this Motion.

## EMERGENCY CONSIDERATION

29. The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," and paragraph 8(e) of the Complex Case Procedures pursuant to the General Order 2023-01 and Rule 1001-1(b) of the Northern District of Texas Local Bankruptcy Rules. The failure to receive the requested relief during the first 21 days of these chapter 11 cases would

severely disrupt the Debtors' operations and significantly impact the Debtors' ability to swiftly and efficiently move forward with a value-maximizing transaction. Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and demonstrated the extraordinary circumstances that justify immediate relief, and request that the Court approve the relief requested in this Motion on an emergency basis.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

30. The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). The relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors' ongoing operations and value-maximization process. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply

## RESERVATION OF RIGHTS

31. Nothing contained herein or any action taken pursuant to relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the

Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

## NOTICE

32. Notice of this Motion has been provided by email, facsimile, or overnight courier to: (a) the proposed Complex Service List (as defined in the Creditor Matrix Motion filed contemporaneously herewith); and (b) the Cash Management Banks (as defined in the Cash Management Motion filed contemporaneously herewith). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PREVIOUS REQUEST

33. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of the page intentionally left blank]*

The Debtors request entry of the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and granting such other relief as is just and proper.

Dated: December 18, 2023
Dallas, Texas

/s/ *Thomas R. Califano*
**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Jeri Leigh Miller (24102176)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:    tom.califano@sidley.com
rpatel@sidley.com
jeri.miller@sidley.com

*and*

Andres Barajas (*pro hac vice* pending)
Weiru Fang (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:    (212) 839-5300
Facsimile:    (212) 839-5599
Email:    andres.barajas@sidley.com
weiru.fang@sidley.com

*Proposed Attorneys for the Debtors
and Debtors in Possession*