

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 26, 2024**

_____
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **Ebix, Inc., *et al.*,**[1] | § | **Case No. 23-80004 (SWE)** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

### FINAL ORDER (I) AUTHORIZING
### (A) POSTPETITION FINANCING, AND (B) THE USE OF CASH COLLATERAL;
### (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
### EXPENSE CLAIMS; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION
### LENDERS; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING
### RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ebix, Inc. (1975), Vertex, Incorporated (6295), P.B. Systems, Inc. (9074), Ebix Consulting, Inc. (6666), Ebix US, LLC (N/A), Facts Services, Inc. (1348), Doctors Exchange, Inc. (N/A), Ebix International LLC (N/A), Agency Solutions.com, LLC d/b/a Health Connect LLC (N/A), ConfirmNet Corporation (2737), A.D.A.M., Inc. (8070), and Ebix Latin America, LLC. (N/A).  The Debtors' mailing address is 1 Ebix Way, Johns Creek, Georgia 30097.

Upon the motion (the "Motion")[2] of Ebix, Inc. and its debtor affiliates, as debtors and

debtors in possession (collectively, the "Debtors") seeking entry of the *Interim Order (I)*

*Authorizing (A) Postpetition Financing, and (B) The Use of Cash Collateral; (II) Granting Liens*

*and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection*

*to Prepetition Lenders; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and*

*(VI) Granting Related Relief* [D.I. 64] (the "Interim Order") and this final order (the "Final Order,"

and together with the Interim Order, the "DIP Orders") pursuant to sections 105, 361, 362(d),

363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 503(b), and 507 of title 11 of the United States

Code (the "Bankruptcy Code"), and Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the Northern District of Texas (the "Local

Rules"), and the Procedures for Complex Cases in the Northern District of Texas (the "Complex

Case Procedures"), inter alia:

(i)     authorizing Ebix, Inc. (the "DIP Borrower") to obtain postpetition financing (the "DIP
        Financing") pursuant to a senior secured, superpriority, debtor-in-possession term loan
        credit facility (the "DIP Facility") subject to the terms and conditions set forth in that
        certain Senior Secured Superpriority Debtor-in-Possession Term Loan Credit
        Agreement attached to the Interim Order as Exhibit 1 (as amended, restated, amended
        and restated, supplemented, or otherwise modified from time to time, the "DIP Credit
        Agreement"), by and among the DIP Borrower, the Guarantors (as defined in the DIP
        Credit Agreement), the lenders party to the Prepetition Credit Agreement (defined
        below) or a subset thereof (collectively, the "DIP Lenders"), and Regions Bank, as
        administrative agent and collateral agent (in such capacity, together with its successors
        and permitted assigns, the "DIP Agent" and, together with the DIP Lenders, the "DIP
        Secured Parties"), consisting of:

        A. new money term loans in an aggregate principal amount of $35 million (the
           commitments in respect thereof, the "New Money DIP Commitments" and such
           loans, the "New Money DIP Loans") from the DIP Lenders, of which $15 million
           was drawn upon entry of the Interim Order (the "Initial Draw"), with the remainder
           only to be available subject to and following entry of this Final Order (the "Delayed

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

Draws"), in each case in accordance with the terms of the DIP Documents and any Approved Budget; and

B. on the date of entry of this Final Order (the "Roll-Up Effective Date"), $70 million in the aggregate principal amount of outstanding Term Loans (as defined in the Prepetition Credit Agreement, the "Prepetition Term Loans") and Revolving Loans (as defined in the Prepetition Credit Agreement, the "Prepetition Revolving Loans") held by the DIP Lenders shall be deemed substituted and exchanged for term loans under the DIP Credit Agreement, on a pro rata basis in accordance with the share of New Money DIP Loans made by such DIP Lender and subject to the terms and conditions of the DIP Credit Agreement (the "DIP Rolled-Up Loans" and, together with the New Money DIP Loans, the "DIP Loans," and such substitution and exchange, the "Roll-Up"), which Rolled-Up Loans shall be deemed funded on the Roll-Up Effective Date;

(ii) authorizing the Debtors to execute, deliver, and perform under the DIP Credit Agreement and the other DIP Documents (as defined herein), the DIP Orders, and all other related agreements and documents creating, evidencing, or securing indebtedness or obligations of any of the Debtors to the DIP Agent and the DIP Lenders on account of the DIP Facility or granting or perfecting liens or security interests by any of the Debtors in favor of and for the benefit of the DIP Agent, for itself and for and on behalf of the DIP Lenders, on account of the DIP Facility, as the same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all of the agreements and documents currently executed or to be executed in connection therewith or related thereto, by and among any of the Debtors, the DIP Agent, and the DIP Lenders, and, in accordance with the Credit Documents (as defined in the DIP Credit Agreement, collectively, the "DIP Documents");

(iii) authorizing the Debtors to effectuate the Roll-Up in accordance with the DIP Documents and this Final Order;

(iv) authorizing the Debtors to pay fees and reimburse expenses under the DIP Documents, and perform such other and further acts as required in connection with the DIP Documents;

(v) granting to the DIP Agent, for itself and for and on behalf of the DIP Lenders, and authorizing the Debtors to incur, valid, binding, enforceable, non-avoidable, and automatically and properly and fully perfected DIP Liens (defined below) in all DIP Collateral (defined below) pursuant to sections 364(c)(2), (c)(3), and (d), to secure the DIP Loans and all obligations and indebtedness of any of the Debtors to the DIP Agent and the DIP Lenders under the DIP Documents, including all interest accrued and accruing thereon, and all other amounts owing by the respective Debtors in respect thereof (collectively, the "DIP Obligations"), which DIP Obligations shall be subject and subordinate only to the Carve-Out (defined below);

(vi) granting to the DIP Agent, for itself and for and on behalf of the DIP Lenders, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the

3

Bankruptcy Code against each of the Debtors in respect of all DIP Obligations, with recourse to all prepetition and postpetition property of the Debtors;

(vii)    granting automatically perfected liens, security interests and other adequate protection to the Prepetition Secured Parties (defined below) under the Prepetition Credit Agreement in their Prepetition Collateral (defined below) resulting from the use of Cash Collateral (defined below) or otherwise, and subject to the restrictions set forth in the DIP Documents, the Interim Order, and this Final Order, authorizing the Debtors to use the Prepetition Collateral, including Cash Collateral of the Prepetition Secured Parties under the Prepetition Credit Documents (defined below), and provide adequate protection to the Prepetition Secured Parties for any Diminution In Value (defined below) of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), for any reason provided for under the Bankruptcy Code, including resulting from the imposition of the automatic stay under section 362 of the Bankruptcy Code, the Debtors' use, sale, or lease of the Prepetition Collateral (including Cash Collateral);

(viii)    except to the extent of the Carve-Out, waiving all rights to surcharge any DIP Collateral or Prepetition Collateral under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity;

(ix)    waiving the equitable doctrine of "marshaling" and other similar doctrines with respect to (a) the DIP Collateral for the benefit of any party other than the DIP Secured Parties and (b) the Prepetition Collateral (including the Cash Collateral) for the benefit of any party other than the Prepetition Secured Parties;

(x)    vacating and modifying the automatic stay of section 362 of the Bankruptcy Code to the extent provided to permit the Debtors and their affiliates, the DIP Secured Parties, and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the Interim Order and this Final Order and the DIP Documents and to deliver any notices of termination described below and as further set forth herein; and

(xi)    waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the immediate effectiveness and enforceability of the DIP Orders.

The Court having considered the Motion, the *Declaration of Richard W. Morgner in Support of the Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing Debtors (A) to Obtain Postpetition Financing and (B) to Utilize Cash Collateral, (II) Granting Adequate Protection and (III) Scheduling Final Hearing* [D.I. 14] (the "Morgner Declaration") and the *Declaration of Amit K. Garg, Chief Financial Officer of Ebix, Inc. in Support of Chapter 11 Petitions and First Day Motions* [D.I. 16] (the "First Day Declaration"), the available DIP

Documents, and the evidence submitted and arguments made at the interim hearing on the Motion on December 19, 2023 (the "Interim Hearing") and the final hearing on the Motion on January 26, 2024 (the "Final Hearing"); and the Court having entered the Interim Order; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the Local Rules, notice of the Motion and the Final Hearing having been given; and it appearing that approval of the relief requested in the Motion on a final basis is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and essential for the continued operation of the Debtors' businesses; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

**THE CHAPTER 11 CASES; JURISDICTION AND NOTICE**

A.      On December 17, 2023 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court").   The Debtors' chapter 11 cases (collectively, these "Chapter 11 Cases") have been consolidated for procedural purposes only and are being administered jointly pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  Since the Petition Date, the Debtors have continued in the management and possession of their business and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.       On January 3, 2024, the Office of the United States Trustee for the Northern District

of Texas (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the

"Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code in these Chapter 11

Cases.

C.       This Court has jurisdiction over this proceeding and the parties and property

affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Chapter 11 Cases is proper

pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to

28 U.S.C. § 157(b)(2)(A), (B), (D), (G), (K), (M) and (O).

D.       Notice of the Motion and the Final Hearing has been given pursuant to Bankruptcy

Rules 2002, 4001, 9006, and 9014 and the Local Rules, and as required by sections 102, 105, 361,

362, 363, and 364 of the Bankruptcy Code.  Such notice is sufficient for all purposes under the

Bankruptcy Code and the applicable Bankruptcy Rules in respect to the relief requested and no

further notice of the relief sought in the Motion is necessary.

**DEBTORS' STIPULATIONS**

E.       Subject to the provisions and limitations contained in paragraph 61 hereof

(including the Challenge Period, as defined therein), and after consultation with their attorneys and

financial advisors, the Debtors admit, stipulate, and agree that:

(i)      *Prepetition Secured Facility*.  Pursuant to that certain Credit Agreement, dated as of
August 5, 2014 (as amended, supplemented, restated or otherwise modified prior to the
Petition Date, the "Prepetition Credit Agreement" and, collectively with the Credit
Documents (as defined in the Prepetition Credit Agreement) and any other agreements
and documents executed or delivered in connection therewith, each as amended,
restated, supplemented, or otherwise modified from time to time, the "Prepetition
Credit Documents"), by and among (a) Ebix, Inc., as borrower (the "Prepetition
Borrower"), (b) the guarantors party thereto (in such capacities, the "Prepetition
Guarantors" and, together with the Prepetition Borrower, the "Prepetition Obligors"),
(c) Regions Bank, as administrative agent and collateral agent (in such capacities, the
"Prepetition Agent"), and (d) the lenders party thereto from time to time (collectively,
the "Prepetition Lenders" and together with the Prepetition Agent, the "Prepetition

6

Secured Parties"), the Prepetition Lenders provided the Prepetition Term Loans and the Prepetition Revolving Loans to the Prepetition Borrower.

(ii)   *Prepetition Secured Obligations.*  As of the Petition Date, the Prepetition Borrower and the Prepetition Guarantors were justly and lawfully indebted and liable to the Prepetition Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than (a) $171,871,580.00 of the outstanding Prepetition Term Loans, and (b) $444,901,620.85 of the outstanding Prepetition Revolving Loans, in each case pursuant to, and in accordance with the terms of, the Prepetition Credit Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition Credit Documents (collectively, the "Prepetition Secured Debt"), which Prepetition Secured Debt has been guaranteed on a joint and several basis by each of the Prepetition Guarantors.

(iii)   *Validity of Prepetition Secured Debt.*  The Prepetition Secured Debt constitutes legal, valid, binding, and non-avoidable obligations of the Prepetition Borrower and the Prepetition Guarantors, as applicable, enforceable in accordance with its terms and no portion of the Prepetition Secured Debt or any payment made to the Prepetition Secured Parties, in their capacities as such, or applied to or paid on account of the obligations owing under the Prepetition Credit Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is used in the Bankruptcy Code), cause of action (including any claims or avoidance actions under Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

(iv)   *Validity, Perfection and Priority of Prepetition Liens.*  Pursuant to and in connection with the Prepetition Credit Documents, the Prepetition Borrower and the Prepetition Guarantors granted to the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, a security interest in and continuing lien, senior in priority over any and all other liens (the "Prepetition Liens"), on substantially all of their assets and property, including the "Collateral" (as defined in Prepetition Credit Agreement) (which includes certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Collateral").  As of the Petition Date, such Prepetition Liens constitute valid, binding, properly perfected, enforceable, non-avoidable first priority security interests in and continuing liens on the Collateral, which Prepetition Liens are not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, rejection, reduction, disallowance, impairment, counterclaim, offset, crossclaim, defense or Claim (as defined in the Bankruptcy Code), subject and subordinate only to certain liens permitted by the Prepetition Credit Documents, solely to the extent any

7

such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, or that are perfected subsequent to the Petition Date, but solely as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Prepetition Permitted Senior Liens").

(v)     *No Control*.  None of the Prepetition Secured Parties, by virtue of any actions taken with respect to, in connection with, related to or arising from the Prepetition Credit Documents, control (or have in the past controlled) the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders of the Debtors.

(vi)    *No Claims or Causes of Action*.  As of the Petition Date, the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents, or actions for recovery or disgorgement, against any of the Prepetition Secured Parties or any of their Representatives (as defined herein) (in each case, in their capacities as such) arising out of, based upon or related to the Prepetition Secured Debt, and the Debtors waive, discharge and release any right to challenge any of the Prepetition Secured Debt and the Prepetition Liens.

## FINDING REGARDING THE DIP FINANCING AND USE OF CASH COLLATERAL

F.      *Corporate Authority*.  Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder, and no other consents or approvals are required from any party, including any governmental authority, for each Debtor to execute, deliver, and perform under the DIP Documents.  None of the execution and delivery of, or the performance under, any DIP Document by any Debtor is in contravention of any applicable law, rule, or regulation, or will result in a violation or contravention of any governance document of any Debtor or the breach or violation of, or be inconsistent with, any agreement, contract or instrument to which any Debtor is a party.

G.      As used herein, the term "Cash Collateral" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Prepetition Secured Parties or any of the DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

H.      Good and sufficient cause has been shown for the entry of this Final Order and for authorization of the Debtors to obtain financing pursuant to the DIP Documents.

I.      The Debtors have a critical need to obtain the DIP Financing and to use Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to pay salaries and wages, to make capital expenditures, to satisfy other working capital and operational needs, and to fund expenses of these Chapter 11 Cases. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, the incurrence of new indebtedness under the DIP Documents, and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Debtors and to a successful restructuring of the Debtors.

J.      Based upon the pleadings and proceedings of record in the Chapter 11 Cases, including the Motion, the Morgner Declaration, the First Day Declaration and the record presented to the Court at the Interim Hearing and the Final Hearing, (i) the Debtors are unable to obtain interim or long-term financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense; and (ii) the Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting to the DIP Secured Parties the DIP Liens (as defined herein) and the DIP Superpriority Claims (as defined herein) and incurring the Adequate Protection Obligations (as defined herein), in each case as provided for herein subject to the Carve-Out to the

extent set forth herein, under the terms and conditions set forth in the DIP Orders and in the DIP

Documents.

K.      The Debtors continue to collect cash, rents, income, offspring, products, proceeds,

and profits generated from the Prepetition Collateral and acquire equipment, inventory and other

personal property, all of which constitute Prepetition Collateral under the Prepetition Credit

Documents that are subject to the Prepetition Secured Parties' security interests as set forth in the

Prepetition Credit Documents, as applicable.

L.      The Debtors desire to use a portion of the cash, rents, income, offspring, products,

proceeds and profits described in the preceding paragraph that constitute Cash Collateral of the

Prepetition Secured Parties under section 363(a) of the Bankruptcy Code in their business

operations.   Certain prepetition rents, income, offspring, products, proceeds, and profits, in

existence as of the Petition Date or hereafter created or arising, including balances of funds in the

Debtors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral.

M.      Based upon the pleadings and proceedings of record in the Chapter 11 Cases,

including the Motion, the Morgner Declaration, the First Day Declaration and the record presented

to the Court at the Interim Hearing and the Final Hearing, the terms of the DIP Financing (including

the Roll-Up), the terms of the adequate protection granted to the Prepetition Secured Parties as

provided in paragraphs 14-18 of this Final Order (the "Adequate Protection"), and the terms on

which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral)

pursuant to this Final Order and the DIP Documents are fair and reasonable, consistent with the

Bankruptcy Code (including section 506(b) thereof), sufficient to protect the interests of the

Prepetition Secured Parties, reflect the DIP Secured Parties' exercise of prudent business judgment

consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

N.      The DIP Lenders have indicated a willingness to provide post-petition secured financing to the Debtors, but solely on the terms and conditions set forth in this Final Order and the DIP Documents.  After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the DIP Facility to be provided by the DIP Lenders and the authorization to use the Cash Collateral represent the best financing presently available to the Debtors.

O.      The DIP Financing (including the Roll-Up), the Adequate Protection, the DIP Liens and the use of the Prepetition Collateral (including Cash Collateral), have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties and the Prepetition Secured Parties, and all of the DIP Secured Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing or the DIP Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Documents and any other DIP Obligations shall be deemed to have been extended by the DIP Agent and the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.

P.      The DIP Agent and the DIP Secured Parties (and the successors and assigns thereof) shall be and are entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

Q.    The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Debtors' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses (including the incurrence and payment of and performance under the Adequate Protection Obligations and the granting of the Adequate Protection Liens (as defined herein)), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The Debtors have been provided adequate consideration and reasonably equivalent value in exchange for the guarantees provided by them.

R.    The Prepetition Secured Parties are entitled to the Adequate Protection provided in this Final Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases, including the Motion, the Morgner Declaration, the First Day Declaration and the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the proposed Adequate Protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral, including the Cash Collateral, and, to the extent their consent is required, the requisite Prepetition Secured Parties have consented or are deemed hereby to have consented to the use of the Prepetition Collateral, including the Cash Collateral, on the terms set forth in this Final Order, and the priming of the Prepetition Liens by the DIP Liens pursuant to the terms set forth in this Final Order and the DIP Documents (including the Roll-Up); provided that nothing in this Final

Order or the DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Final Order and in the context of the DIP Financing authorized by this Final Order to the extent such consent has been or is deemed to have been given, (y) be construed as a consent by any of the Prepetition Secured Parties to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) other than as contemplated by the DIP Financing authorized by this Final Order, or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert any rights of any of the Prepetition Secured Parties, and the rights of any other party in interest, including the DIP Secured Parties, to object to such relief are hereby preserved.

S.     Consistent with and not in limitation of the foregoing, (i) the Prepetition Secured Parties shall have, and fully reserve, the right to assert claims under the Prepetition Credit Documents for the allowance and payment of postpetition interest calculated at any applicable rate of interest (including, without limitation, the default rate under such documents), or on any other basis, as well as for the payment of any other amounts provided for in the Prepetition Credit Documents, and (ii) nothing herein shall be deemed a waiver with respect to or otherwise prejudice the allowance or allowability of such claims or the Debtors' ability to challenge and defend against any such claims and rights under applicable law, including section 506(b) of the Bankruptcy Code.

T.     The Roll-Up reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.  The Prepetition Secured Parties would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Secured Parties would not be willing to provide the DIP Facility or extend credit to the DIP Secured Parties thereunder without the Roll-Up.  The Roll-Up will benefit the Debtors and their estates because it

will enable the Debtors to obtain urgently needed financing critical to administering these Chapter 11 Cases and funding their operations, which financing would not otherwise be available. Notwithstanding anything to the contrary, each of the findings set forth in this paragraph T shall be subject to entry of the Final Order.

U.      The Debtors prepared and delivered to the advisors to the DIP Agent an initial budget (the "Initial DIP Budget"), attached to the Interim Order as Schedule 1.  The Initial DIP Budget reflects, among other things, the Debtors' anticipated operating receipts, anticipated operating disbursements, anticipated non-operating disbursements, net operating cash flow and liquidity for each calendar week covered thereby.  The Initial DIP Budget may be modified, amended, extended, and updated from time to time solely in accordance with the DIP Credit Agreement (each, a "Proposed Budget").  Proposed Budgets shall be provided by the Debtors to the DIP Agent and the Creditors' Committee each Thursday by 1 p.m. (prevailing Eastern Time), beginning with the Thursday during the second full week of the Petition Date, in form and substance reasonably satisfactory to the DIP Agent.  Once a Proposed Budget is approved by the DIP Agent in accordance with the DIP Credit Agreement, such Proposed Budget shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each approved Proposed Budget shall constitute, without duplication, an "Approved Budget").  The DIP Agent must approve or reject the Proposed Budget by 11:59 p.m. (prevailing Eastern Time) on the Friday immediately following its receipt thereof; provided that if the DIP Agent does not object to the Proposed Budget by 11:59 p.m. (prevailing Eastern Time) on the immediately following Friday, such Proposed Budget shall be considered the new Approved Budget (the "Current Approved Budget"); provided, further, that if the DIP Agent does object to the Proposed Budget by 11:59 p.m. (prevailing Eastern Time) on the immediately

14

following Friday, the Current Approved Budget – for variance testing purposes – shall continue in effect and remain unchanged until an updated Proposed Budget has been agreed. The Debtors believe that the Initial DIP Budget is reasonable under the circumstances. The DIP Secured Parties are relying, in part, upon the Debtors' agreement to comply with the Approved Budget (subject to Permitted Variances), the other DIP Documents and the DIP Orders in determining to enter into the postpetition financing arrangements contemplated by and approved on a final basis in this Final Order. The Carve-Out shall apply without regard to whether fees and expenses are provided for in any Approved Budget.

V.      Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits with respect to any of the Prepetition Collateral.

W.      The DIP Financing and the permitted use of Prepetition Collateral (including Cash Collateral), in accordance with the DIP Orders and the DIP Documents, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties. The Motion and the DIP Orders comply with the requirements of Bankruptcy Local Rule 4001-1.

X.      Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Agent, the other DIP Secured Parties, the Prepetition Agent, or the other Prepetition Secured Parties to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien and/or security interests.

15

Y.      In light of the foregoing, the relief hereunder is necessary to avoid harm to the

Debtors' estates because, without the use of Cash Collateral and the additional liquidity pursuant

to the DIP Facility, as provided for herein, the Debtors will not have the funds necessary to orderly

continue the operation of their businesses, to maintain business relationships with vendors,

suppliers and customers, to pay salaries and wages, to make capital expenditures, to satisfy other

working capital and operational needs, and to fund expenses of these Chapter 11 Cases, necessary

to maximize the value of the Debtors' estates.   Accordingly, the use of Cash Collateral by the

Debtors is actual and necessary to preserving their estates.

Z.      The terms of the DIP Facility and the DIP Orders, including, without limitation,

adequate protection and liens granted in accordance therewith, are fair, just, and reasonable under

the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession,

reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary

duties, and are supported by reasonably equivalent value and fair consideration.  Entry of this Final

Order is in the best interest of the Debtors, their stakeholders, and their estates.   Any credit

extended under the terms of the DIP Orders and the DIP Facility shall be deemed to have been

extended in good faith by the DIP Agent and the DIP Lenders, as the term "good faith" is used in

section 364(e) of the Bankruptcy Code.

Based upon the foregoing findings and conclusions, the Motion, the Morgner Declaration,

the First Day Declaration and the record presented to the Court at the Interim Hearing and the Final

Hearing, and after due consideration and good and sufficient cause appearing therefor,

**NOW THEREFORE, THE COURT ORDERS AS FOLLOWS:**

1.      The Motion is hereby GRANTED on a final basis in accordance with the terms and

conditions set forth in the DIP Documents and this Final Order.  Any objections to the Motion

with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and

all reservation of rights included therein, are hereby denied and overruled with respect to this Final

Order.

2.      This Final Order is immediately effective on entry.

## APPROVAL OF DIP FACILITY

3.      The Debtors were, by the Interim Order, and hereby are authorized to execute,

deliver, enter into, and, as applicable, perform all of their obligations under the DIP Documents

and such other and further acts as may be necessary, appropriate or desirable in connection

therewith, in each case without further approval of this Court.  The DIP Borrower was, by the

Interim Order, authorized to borrow money pursuant to the DIP Credit Agreement, which

borrowings shall be used only for purposes permitted under the DIP Documents and this Final

Order, and subject to and in accordance with the Approved Budget (subject to any Permitted

Variances).

4.      In furtherance of the foregoing and without further approval of this Court, each

Debtor was, by the Interim Order, and by this Final Order hereby is authorized and directed to

perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges,

deeds and documents (including, without limitation, the execution or recordation of pledge and

security agreements, mortgages, financing statements and other similar documents), and to pay all

fees, expenses and indemnities in connection with or that may be reasonably required, necessary,

or desirable for the DIP Secured Parties' performance of their obligations under or related to the

DIP Financing, including, without limitation:

a.      the execution and delivery of, and performance of its obligations

under, each of the DIP Documents;

b.      the execution and delivery of, and performance of its obligations under, any amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the DIP Secured Parties and the DIP Agent (acting in accordance with the terms of the DIP Credit Agreement) may agree, it being understood that no further approval of this Court shall be required for any authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees and other expenses, including attorneys', accountants', appraisers' and financial advisors' fees, amounts, charges, costs, indemnities and other like obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder, increase the aggregate commitments, or increase the rate of interest payable or fees that are payable calculated on commitments thereunder. Updates, modifications, and supplements to the Approved Budget shall not require any further approval of this Court; provided that the Debtors will notify the Creditors' Committee of all updates, modifications, and supplements to the DIP Documents and the Approved Budget;

c.      the non-refundable payment to the DIP Secured Parties of all fees and rights received as consideration under, or in connection with, the DIP Facility, whether paid pursuant to the Interim Order or this Final Order, including the DIP Agent's fees, upfront fees, exit fees, rights under the DIP Credit Agreement, indemnities and professional fees (the payment of which fees was and shall be irrevocable, and was and shall be deemed to have been, approved upon entry of the Interim Order or this Final Order, as applicable, whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise

by any person or entity) and any amounts due (or that may become due) in respect of any indemnification and expense reimbursement obligations, in each case referred to in the DIP Credit Agreement or the DIP Documents, and the costs and expenses as may be due from time to time in accordance with the DIP Documents, including, without limitation, reasonable and documented fees and expenses of the professionals retained by, or on behalf of, any of the DIP Agent (including, without limitation, those of Mayer Brown LLP and FTI Consulting, Inc.), any other local legal counsel or other advisors in any jurisdictions, and any other advisors as are permitted under the DIP Documents, in each case, as provided for in the DIP Documents and subject to the terms of the DIP Orders, without the need to file retention motions or fee applications; and

        d.      the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and the DIP Superpriority Claims and perfection of the DIP Liens as permitted herein and therein, in accordance with the terms of the DIP Documents.

### DIP Obligations

     5.      Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute legal, valid, binding and non-avoidable obligations of the Debtors, enforceable against each Debtor and its estate in accordance with the terms of the DIP Documents and the DIP Orders, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Upon execution and delivery of the DIP Documents, the DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to any of the DIP Agent or DIP Secured Parties, in such capacities, in each case, under, or secured by, the DIP Documents

(including the DIP Orders), including all principal, interest, costs, fees, expenses, premiums, indemnities and other amounts under the DIP Documents (including the DIP Orders). The Debtors shall be jointly and severally liable for the DIP Obligations. Except as expressly permitted by this Final Order, no obligation, payment, transfer, or grant of security hereunder or under the DIP Documents to the DIP Agent and/or the DIP Secured Parties (including their Representatives) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

6.      On the Roll-Up Effective Date, the Debtors shall be deemed, automatically and without any further action, to substitute and exchange outstanding Prepetition Term Loans and Prepetition Revolving Loans of the DIP Lenders on a cashless basis with DIP Rolled-Up Loans in accordance with the Roll-Up and subject to the terms and conditions set forth in the DIP Documents. Upon and after the Roll-Up, the Prepetition Term Loans and Prepetition Revolving Loans deemed substituted and exchanged under this paragraph 6 shall be deemed indefeasibly paid and the DIP Rolled-Up Loans substituted thereby shall be deemed exchanged therefor by each DIP Lender (or an investment advisor, manager, or beneficial owner for the account of such DIP Lender, or an affiliated fund or trade counterparty designated by such DIP Lender) on a pro rata basis, in accordance with the share of New Money DIP Loans made by such DIP Lender. The

cashless substitution and exchange of Prepetition Term Loans and Prepetition Revolving Loans by "rolling-up" such amounts into DIP Obligations as described in this paragraph 6 shall be authorized as compensation for, in consideration for, as a necessary inducement for, and on account of the agreement of the DIP Lenders to fund the New Money DIP Loans and not as adequate protection for, or otherwise on account of, the Prepetition Secured Debt. Notwithstanding anything to the contrary herein or in the DIP Documents, the claims and liens in respect of the DIP Rolled-Up Loans shall, to the same extent as the New Money Loans, be subject and subordinate to the claims and liens in respect of the Carve-Out in all respects.

7.       The DIP Agent and the Prepetition Agent, acting at the direction of, as applicable, the applicable required parties under the DIP Documents or the applicable required parties under the Prepetition Credit Documents, were, by the Interim Order, and by the Final Order hereby are authorized to take any actions as may be necessary or advisable to effectuate the terms of the Roll-Up, in accordance with the terms of the DIP Documents.

### DIP Superpriority Claims and DIP Liens

8.       Subject and subordinate only to the Carve-Out (as defined herein), all of the DIP Obligations shall constitute allowed superpriority administrative expense claims (including super-priority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code) against the Debtors on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection

Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "DIP Superpriority Claims") (i) shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and (ii) shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, upon entry of this Final Order, claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions") and any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Proceeds"); provided that DIP Superpriority Claims shall not be payable from the Carve-Out Account and amounts held therein (other than the Debtors' reversionary interest therein) and any DIP Excluded Collateral (as defined below) in accordance with the DIP Documents and the DIP Orders.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

9.      As security for the DIP Obligations, effective and automatically and properly perfected upon the date of the Interim Order and without the necessity of the execution, recordation or filing by the Debtors or any of the DIP Secured Parties of any mortgages, security agreements, control agreements, pledge agreements, financing statements, intellectual property filing or other similar documents, any notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the DIP Agent of, or over, any Collateral, without any further action by any Debtors, the DIP Agent or any DIP Secured Party, the following valid, binding, continuing, enforceable and non-avoidable security interests

and liens (all security interests and liens granted to the DIP Agent, for its benefit and for the benefit of the other DIP Secured Parties, pursuant to the DIP Orders and the DIP Documents, the "DIP Liens") were, by the Interim Order, and by this Final Order hereby are granted to the DIP Agent for its own benefit and the benefit of the other DIP Secured Parties (all property identified in clauses (i) through (ii) below being collectively referred to as the "DIP Collateral"):

        a.     *Liens on Unencumbered Property.*  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest (subject and subordinate only to the Carve-Out) in, and lien upon, all tangible and intangible prepetition and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, is not subject to (i) a valid, properly-perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, including, without limitation, any and all unencumbered cash of the Debtors (whether maintained with any of the DIP Secured Parties or otherwise) and any investment of cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, causes of action, insurance policies and rights, claims and proceeds from insurance, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), chattel paper (including electronic chattel paper and tangible chattel paper), interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, equity interests of subsidiaries, joint ventures and other entities, wherever located, and the proceeds, products, rents and profits of the foregoing, whether

arising under section 552(b) of the Bankruptcy Code or otherwise (the "Unencumbered Property"), in each case other than any DIP Excluded Collateral and the Carve-Out Account and any amounts held therein (but, "Unencumbered Property" shall include Avoidance Actions and Avoidance Proceeds).

        b.      *Liens Priming Certain Prepetition Secured Parties' Liens*. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest (subject and subordinate only to (i) the Carve-Out and (ii) Prepetition Permitted Senior Liens (as defined in paragraph E(iv) above) in, and lien upon, the DIP Collateral (the "DIP Priming Liens"). Notwithstanding anything herein to the contrary, the DIP Priming Liens shall be (i) senior in all respects to the Prepetition Liens, (ii) senior to any Adequate Protection Liens on DIP Collateral and (iii) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

        c.      *Liens Junior to Prepetition Permitted Senior Liens*. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest (subject and subordinate only to the Carve-Out) in and lien upon all tangible and intangible prepetition and postpetition property of the Debtors that, on or as of the Petition Date, is subject to valid and non-avoidable Prepetition Permitted Senior Liens, which DIP Liens shall be (x) immediately junior and subordinate to any such Prepetition Permitted Senior Liens but (y) senior to the Prepetition Liens and the Adequate Protection Liens on all Prepetition Collateral subject to such Prepetition Permitted Senior Liens.

        d.      *Liens Senior to Certain Other Liens*. The DIP Liens shall not be: (x) subject or subordinate to or made *pari passu* with (1) any lien or security interest that is avoided

24

and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (2) unless otherwise provided for in the DIP Documents or the DIP Orders, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, or (3) any intercompany or affiliate liens of the Debtors or security interests of the Debtors; or (y) subordinate to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

10.    Notwithstanding anything herein to the contrary, in no event shall DIP Collateral (and the DIP Liens and Adequate Protection Liens thereon) include (i) any property subject to the anti-assignment provisions of the Uniform Commercial Code or other applicable law and (ii) the equity interest in Ebix Health Administration Exchange, Inc. (the "DIP Excluded Collateral"); provided that, DIP Collateral will include any proceeds in respect of the DIP Excluded Collateral.

## Cash and DIP Proceeds

11.    To the extent proceeds of the DIP Facility are deposited into any account maintained by the Debtors, the DIP Liens, as of the date of entry of the Interim Order, have been deemed automatically and properly perfected on such proceeds.

12.    Except as expressly permitted in the DIP Orders or the DIP Documents and except with respect to the DIP Secured Parties, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of all Commitments (as defined in DIP Credit Agreement) or, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP

Agent and the DIP Secured Parties and shall immediately turn over the proceeds to the DIP Agent, for application in accordance with the DIP Documents and the DIP Orders.

13.     To the extent there exists or comes to exist any cash of the Debtors' estates that is not Cash Collateral of the Prepetition Secured Parties, wherever located and however held, such cash shall be deemed to have been used first by the Debtors' estates prior to any use of Cash Collateral of the Prepetition Secured Parties, and such cash, to the extent applicable, shall be subject to the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens (defined below), and Adequate Protection 507(b) Claims (defined below) granted to the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders hereunder.

## **ADEQUATE PROTECTION**

### **Budgeted Cash Usage**

14.     The Debtors were, by the Interim Order, and by this Final Order hereby are authorized, subject to the terms and conditions of this Final Order, to use all Cash Collateral in accordance with the DIP Documents and Approved Budget (subject to Permitted Variances (defined below); underline provided that (a) the Prepetition Secured Parties are granted the Adequate Protection as hereinafter set forth, and (b) except on the terms and conditions of this Final Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court, and subject to the Carve-Out in all respects.  The Debtors shall comply with the Approved Budget and all disbursements of the Debtors shall be consistent with the provisions of the Approved Budget, in each case subject to Permitted Variances.  The Debtors shall update the Approved Budget from time to time in accordance with the DIP Documents and this Final Order.

15.     The Debtors hereby covenant and agree that commencing on the Petition Date and at all times thereafter, the Debtors shall strictly perform in accordance with the Approved Budget,

subject to certain limited variances (the "Permitted Variance") as set forth in section 8.19 of the

DIP Credit Agreement.

16.    Except as provided in the Approved Budget, the Debtors agree that no transfer of

Cash Collateral shall be made to any of the Debtors' insiders, as that term is defined in section

101(31) of the Bankruptcy Code.  The DIP Agent and the Creditors' Committee has the right to

request information in connection with any Proposed Budget regarding any payments to insiders

on a line-item basis.  Any information transmitted in connection with this paragraph 16 shall be

transmitted to the DIP Agent and the Creditors' Committee concurrently.

### Adequate Protection of Prepetition Secured Parties

17.    The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e),

364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their respective interests in

the Prepetition Collateral (including Cash Collateral) for the aggregate diminution in the value of

their respective interests in the Prepetition Collateral (including Cash Collateral) from and after

the Petition Date for any reason provided for under the Bankruptcy Code, until the Prepetition

Secured Debt has been fully satisfied pursuant to a confirmed plan of reorganization which has

become effective or otherwise satisfied during the course of the Chapter 11 Cases,  including,

without limitation, any such diminution resulting from the imposition of the automatic stay

pursuant to section 362 of the Bankruptcy Code, the sale, lease or use by the Debtors of the

Prepetition Collateral, the priming of the Prepetition Liens by the DIP Liens pursuant to the DIP

Documents, and the DIP Orders, the payment of any amounts under the Carve-Out or pursuant to

the Interim Order, this Final Order, or any other order of the Court or provision of the Bankruptcy

Code or otherwise (collectively, "Diminution in Value") (the "Adequate Protection Claims");

provided, however, that the DIP Loans (for avoidance of doubt, including the Roll-Up) shall not be subject to adequate protection.

**Adequate Protection Liens and 507(b) Claims**

18.     In consideration of the foregoing, the Prepetition Agent, for itself and for the benefit of the Prepetition Lenders, was, by the Interim Order, and by this Final Order hereby are granted the following as Adequate Protection, including as an inducement to the Prepetition Secured Parties to consent to the priming of the Prepetition Liens and use of the Prepetition Collateral (including Cash Collateral) (collectively, the "Adequate Protection Obligations"):

a.     *Adequate Protection Liens*.  The Prepetition Agent, for itself and for the benefit of the Prepetition Lenders, was, by the Interim Order, and by this Final Order hereby are granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), on account of its Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral (the "Adequate Protection Liens") subject and subordinate only to (i) the Prepetition Permitted Senior Liens, (ii) the Carve-Out, and (iii) the DIP Liens.

b.     *Prepetition Secured Parties' Section 507(b) Claim*.  The Prepetition Agent, for itself and for the benefit of the Prepetition Lenders, was, by the Interim Order, and by this Final Order hereby are granted an allowed superpriority administrative expense claim on account of such Prepetition Secured Parties' Adequate Protection Claims as provided for in section 507(b) of the Bankruptcy Code (the "Adequate Protection 507(b) Claim"), which Adequate Protection 507(b) Claim shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (including, without limitation, the Avoidance Actions and Avoidance Proceeds).

With respect to the Prepetition Collateral, the Adequate Protection 507(b) Claim shall be senior to all other claims of any kind and, with respect to the DIP Collateral, the Adequate Protection 507(b) Claim shall be subject and subordinate only to the Carve-Out, the Prepetition Permitted Senior Liens and the DIP Superpriority Claims.

c.      *Current Payment of Prepetition Secured Parties' Fees and Expenses.*  As further adequate protection, the Debtors shall provide the Prepetition Agent, for the benefit of the applicable Prepetition Secured Parties, current cash payments, in accordance with the Prepetition Credit Documents, of all reasonable and documented prepetition and postpetition fees and expenses, including, but not limited to, the reasonable and documented fees and out-of-pocket expenses of primary, special, conflicts and local counsel (in each applicable jurisdiction) and financial advisors to the Prepetition Agent, including, without limitation, Mayer Brown LLP and FTI Consulting, Inc. and primary, special, conflicts and local counsel (in each jurisdiction) to the DIP Agent (such fees and expenses, the "Adequate Protection Fees and Expenses"). Reimbursement of the Adequate Protection Fees and Expenses shall be subject to the review procedures set forth in paragraph 39 of this Final Order.

d.      *Additional Adequate Protection Information Rights.*      The Prepetition Secured Parties were, by the Interim Order, and by this Final Order hereby are entitled to delivery of all reports and notices deliverable to the DIP Lenders and/or the DIP Agent pursuant to Section 7.1 of the DIP Credit Agreement at the same time as such reporting is (or would be required to be) provided to the DIP Lenders and/or the DIP Agent, as applicable, and subject to applicable confidentiality restrictions in any of the Prepetition Credit Documents, including with respect to any "private" side lender database (the "Prepetition Adequate Protection Information Right").  Upon indefeasible payment in full of all DIP Obligations and termination of all

Commitments (as defined in DIP Credit Agreement), the Prepetition Secured Parties shall continue to be entitled hereby to satisfaction of the Prepetition Adequate Protection Information Rights.

e.     *Maintenance of Collateral.*  The Debtors shall continue to maintain and insure the Prepetition Collateral and DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Credit Documents and the DIP Documents, as applicable.

### **Automatic Perfection**

19.    This Final Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the DIP Lenders' and the Prepetition Lenders' security interests in and liens on the Collateral granted and created hereunder, and such security interests and liens shall constitute valid, automatically perfected and unavoidable security interests and liens, with the priorities granted hereunder, effective as of the Petition Date, without the necessity of creating, filing, recording, or serving any financing statements, continuation statements, mortgages, or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to the DIP Agent and the Prepetition Agent, for themselves and for and on behalf of the DIP Lenders and Prepetition Lenders, as applicable, by the DIP Orders.

20.    To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the liens and security interests granted and created by any DIP Order or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the Court.

21.    By virtue of the terms of the DIP Orders, to the extent that the DIP Agent, the Prepetition Agent or any Prepetition Lender has filed Uniform Commercial Code financing statements or other security or perfection documents under the names of any of the Debtors, such

filings shall be deemed to properly perfect the liens and security interests granted under the Interim

Order and this Final Order, including, without limitation, the DIP Liens and the Adequate

Protection Liens, without the necessity of filing or recording any financing statement, mortgage,

notice, or other instrument or document which may otherwise be required under the law or

regulation of any jurisdiction or the taking of any other action (including entering into any deposit

account control agreement, collateral access agreement, customs broker agreement or freight

forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law)

the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent, the Prepetition

Agent, DIP Lenders or the Prepetition Lenders, as applicable, to the priorities granted herein.

      22.    To the extent that the Prepetition Agent or any other Prepetition Secured Party is

the secured party under any account control agreements, listed as loss payee under the Debtors'

insurance policies or is the secured party under any Prepetition Credit Document, the DIP Agent

is also deemed to be the secured party under such account control agreements, loss payee under

the Debtors' insurance policies and the secured party under each such Prepetition Credit

Document, shall have all rights and powers attendant to that position (including, without limitation,

rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or

received first, for the benefit of the DIP Secured Parties in accordance with the DIP Documents

and second, subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of

the Prepetition Secured Parties.  The Prepetition Agent and each Prepetition Secured Party shall

serve as agent of the DIP Agent for purposes of perfecting the DIP Agent's security interests and

liens on all DIP Collateral that is of a type such that perfection of a security interest therein may

be accomplished only by possession or control by a secured party.

23.     Without in any way limiting the automatically valid effective perfection of the DIP Liens and the Adequate Protection Liens granted pursuant to the DIP Orders, if the DIP Agent or the Prepetition Agent shall elect, in their determination and in the case of the DIP Agent as directed by the requisite lenders under DIP Credit Agreement, for any reason to file any Uniform Commercial Code financing statements or other recordable documents, or execute or enter into deposit account control agreements, to further evidence perfection of their interests in property of the estates, the DIP Agent (as directed by the requisite lenders under the DIP Credit Agreement or the Prepetition Agent, as applicable) or, upon the request of the DIP Agent or Prepetition Agent, as applicable, the Debtors are authorized and directed to execute, enter into, and/or file, or cause to be executed, entered into, and/or filed, all such financing statements or deposit account control agreements and other such documents, and the execution, entering into, filing, recording, or service (as the case may be) of such financing statements, deposit control agreements, or similar documents were deemed to have been made at the time of and on the date of entry of the Interim Order, and the signature(s) of any person(s) designated by the Debtors, whether by letter to the DIP Agent or the Prepetition Agent, as applicable, or by appearing on any one or more of the agreements or other documents respecting the security interests and liens granted hereunder shall bind the Debtors and their estates.  The DIP Agent or the Prepetition Agent, as applicable, may execute such documents on behalf of the Debtors as the Debtors' attorney-in-fact or file a certified copy of the Interim Order or this Final Order in any filing or recording office in any county or other jurisdiction in which any of the Debtors have real or personal property, and, in such event, the subject filing or recording officer is authorized and directed to file or record such documents or certified copy of the Interim Order or this Final Order.

**Authorization to Act**

24.     The Debtors were, by the Interim Order and by this Final Order hereby are authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments and agreements, as the DIP Agent may require as evidence of and for the protection of the Collateral, or that may be otherwise deemed necessary by the DIP Agent or the DIP Lenders to effectuate the terms and conditions of this Final Order and the DIP Facility.

25.     Until such time as the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the DIP Documents, and without further order of the Court: (a) the Debtors shall use the proceeds of the DIP Facility and all Cash Collateral strictly in accordance with the terms of the Approved Budget and the other terms of this Final Order; (b) the Debtors shall not, without prior order of the Court, engage in any transaction that is not in the ordinary course of the Debtors' business; and (c) the Debtors shall timely comply with all of the covenants set forth in the DIP Documents.

**No Additional Liens**

26.     Until such time as the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the DIP Documents and the DIP Orders, the Debtors shall not be authorized to obtain credit secured by a lien or security interest in the Collateral, other than the DIP Facility, without the prior written consent of the DIP Agent, for itself and for and on behalf of the DIP Lenders.

**No Liability**

27.     No act committed or action taken by the DIP Agent, for itself and for and on behalf of the DIP Lenders, as applicable, under this Final Order, the DIP Facility, the DIP Documents, or the collection of the DIP Obligations, shall be used, construed, or deemed to hold the DIP Agent

and/or the DIP Lenders, as applicable, to be in "control" of or participating in the governance, management, or operations of the Debtors for any purpose, without limitation, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s) in "control" with respect to the governance, management, or operation of the Debtors or their businesses (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon the DIP Agent and DIP Lenders, as applicable, under the DIP Documents, or the DIP Orders including, without limitation, such rights and remedies as may be exercisable by the DIP Agent and DIP Lenders, as applicable, in connection with the DIP Orders, the DIP Facility, or the DIP Documents.  Nothing in the DIP Orders, any of the DIP Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their business or in connection with the administration of these Chapter 11 Cases.

**Release**

28.    Effective as of the date of entry of the Interim Order, and subject to paragraph 61 of this Final Order, including the Challenge Period described therein, the Debtors, on behalf of themselves and their respective estates, hereby absolutely, irrevocably, and unconditionally release and forever discharge and acquit DIP Agent and DIP Lenders and their respective former, current, or future officers, partners, directors, managers, members, principals, employees, agents, related funds, affiliates, investors, financing sources, financial advisors, attorneys, legal advisors, shareholders, accountants, investment bankers, consultants, representatives, and other professionals and the respective successors and assigns thereof, in each case solely in their

34

capacities as such (collectively, the "Released Parties"), from any and all claims, offsets, defenses,

counterclaims, set off rights, objections, challenges, causes of action, liabilities, losses, damages,

responsibilities, disputes, remedies, actions, suits, controversies, reimbursement obligations

(including, attorneys' fees), costs, expenses, or judgments of every type, whether known or

unknown, asserted or unasserted, fixed or contingent, or pending or threatened, of any kind or

nature whatsoever, whether arising at law or in equity (including, without limitation, any so-called

"lender liability" or equitable subordination claims or defenses, recharacterization, subordination,

avoidance, any claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code

or under any other similar provisions of applicable state or federal law, or any other claim or cause

of action arising under the Bankruptcy Code or applicable non-bankruptcy law), in each case,

arising under, in connection with, or related to the Debtors or their estates, the extent, amount,

validity, enforceability, priority, security, and perfection of the DIP Facility, the DIP Obligations,

the DIP Liens, the DIP Documents, the negotiation thereof and of the deal reflected thereby, in

each case that the Debtors at any time had, now have or may have, or that their successors or

assigns hereafter can or may have against any of the Released Parties for or by reason of any act,

omission, matter, cause, or thing whatsoever arising at any time on or prior to the date of the

Interim Order, except to the extent such claim, damage, loss, liability, or expense is found in a

final non-appealable judgment by a court of competent jurisdiction to have resulted primarily from

such Released Party's gross negligence, actual fraud, or willful misconduct.  Nothing in this release

shall relieve the DIP Secured Parties or the Debtors of their obligations under the DIP Documents.

### Indemnification

29.     The Prepetition Secured Parties and the DIP Secured Parties have acted in good

faith and without negligence, misconduct, or violation of public policy or law, in respect of all

actions taken by them in connection with or related in any way to negotiating, implementing,

documenting, or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, the DIP Documents, and all other documents related to and all transactions contemplated by the foregoing. Accordingly, without limitation to any other right to indemnification, the Prepetition Secured Parties and the DIP Secured Parties shall be and hereby are indemnified (as applicable) as provided in the Prepetition Credit Documents and the DIP Documents, as applicable, including, without limitation, Section 11.2 of each of the Prepetition Credit Agreement and the DIP Credit Agreement. The Debtors agree that no exception or defense in contract, law, or equity exists to any obligation set forth, as the case may be, in this paragraph 29 or in the DIP Documents, or in the Prepetition Credit Documents to indemnify and/or hold harmless the DIP Agent, any other DIP Secured Party, or any Prepetition Secured Party, as the case may be, and any such defenses are hereby waived. Consistent with the terms of the Prepetition Credit Documents, such indemnification shall not apply to losses, claims, damages, liabilities or related expenses if determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from bad faith, gross negligence or willful misconduct of the Prepetition Secured Parties seeking indemnification.

30.    The DIP Secured Parties and Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, in each case, except for its or such person's own gross negligence, willful misconduct, bad faith or material breach of the DIP Documents or the Prepetition Credit Documents, as applicable, as determined by a final, non-appealable

36

judgment of a court of competent jurisdiction and all risk of loss, damage or destruction of the DIP

Collateral or Prepetition Collateral in the absence of such gross negligence, willful misconduct,

bad faith or material breach shall be borne by the Debtors.

### Automatic Stay

31.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby

modified as necessary to effectuate all of the terms and provisions of this Final Order, including,

without limitation, to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens,

DIP Superpriority Claims and Adequate Protection Claims; (b) permit the Debtors to perform such

acts as the DIP Secured Parties or the Prepetition Secured Parties, as applicable, may reasonably

request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to

incur all liabilities and obligations to the DIP Secured Parties and the Prepetition Secured Parties

under the DIP Documents, the DIP Facility, and the DIP Orders, as applicable; (d) authorize the

Debtors to make, and each of the DIP Secured Parties and the Prepetition Secured Parties to retain

and apply, payments made in accordance with the DIP Orders; and (e) permit the DIP Secured

Parties to exercise all their rights and remedies under the DIP Documents as provided herein.

### Collateral Insurance, Maintenance, Taxes, and Deposits

32.    The Debtors shall maintain, with financially sound and reputable insurance

companies, insurance of the kind covering the Collateral, and in accordance with the Prepetition

Credit Documents and the DIP Documents.  Upon entry of the Interim Order, the DIP Agent, on

behalf of the DIP Secured Parties, was, and was deemed to be, without any further action or notice,

named as an additional insured and loss payee, as applicable, on each insurance policy maintained

now or in the future by any of the Debtors which in any way relates to the Collateral.

33.     The Debtors shall make any and all payments necessary, permitted under the Approved Budget, and in accordance with the DIP Documents to keep the Collateral and their other property in good repair and condition and not permit or commit any waste thereof.

34.     To the extent the Debtors have made or make any deposits for the benefit of utility companies or any other entity, or otherwise set aside funds for the benefit of any entity, except for the Carve-Out Account (and the Debtors shall not make any such deposits or otherwise set aside funds to the extent not included in the Approved Budget without first obtaining prior written consent of the DIP Agent), such deposits shall be, and hereby are, upon any return of same to the Debtors, subject to the DIP Liens and Adequate Protection Liens granted by the DIP Orders.

## Reporting Requirements

35.     The Debtors are authorized and directed to provide to the DIP Agent and the Creditors' Committee all of the financial statements and reporting required under Section 7.1 of the DIP Credit Agreement unless the DIP Agent or the Creditors' Committee, respectively, waives or modifies its such requirements in writing.

## Interest, Fees, Costs and Expenses of the DIP Lenders

36.     During the Chapter 11 Cases, subject to the terms of the DIP Credit Agreement, the interest, fees, costs, and expenses, including attorneys' fees and expenses, due at any time to the DIP Agent or DIP Lenders under the DIP Documents may be charged by the DIP Agent or the DIP Lenders, as applicable, and shall be paid by the Debtors out of the Cash Collateral or out of any DIP Facility advances, in accordance with the terms of this Final Order and the applicable DIP Documents.

37.     The Debtors are hereby authorized and directed to pay the DIP Agent's and DIP Lenders' reasonable and documented (in summary format) fees and out-of-pocket expenses in connection with the negotiation and preparation of the documentation of the DIP Loans, in

accordance with the DIP Credit Agreement, including, but not limited to, legal fees, audit fees, search fees, filing fees, and documentation fees without the DIP Agent, the DIP Lenders, or their counsel having to file any application with this Court for approval or payment.

38.    All DIP Agent and DIP Lender costs, fees and expenses, including legal fees and expenses owed, shall constitute obligations under the DIP Facility and shall be secured by the DIP Collateral and afforded all priorities and protections afforded to the DIP Facility under this Final Order and the DIP Documents.

### Interest, Fees, Costs and Expenses Review Period

39.    Payment of (i) the DIP Agent's and DIP Lenders' fees and expenses, as provided for herein and (ii) the Adequate Protection Fees and Expenses, as provided for herein, shall be paid promptly after the expiration of the Review Period (as defined below).  Any professional retained by the DIP Agent, DIP Lenders, Prepetition Agent, or Prepetition Secured Parties seeking payment of fees and expenses incurred after the Petition Date pursuant to this paragraph shall deliver a summary invoice to the Debtors (which shall not be required to contain time entries or otherwise comply with the Guidelines of the U.S. Trustee, but shall include (x) a general, brief description of the nature of the matters for which services were performed and (y) aggregate amounts of fees and expenses and total amount of time on a per professional basis, each consistent with the local rules, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine), with a copy to the U.S. Trustee, and the Creditors' Committee; provided, however, that (i) any redacted fee statements shall retain all privileges irrespective of any disclosure of any privileged matter,

and any such disclosure shall be deemed inadvertent for all purposes and deemed stricken from any record in these Chapter 11 Cases, any Successor Cases or otherwise, (ii) if the Debtors, the U.S. Trustee, or the Creditors' Committee objects to the reasonableness of such fees and expenses—and such objection is noticed via electronic mail to counsel to the professional and to the professional—and such objection cannot be resolved within ten (10) calendar days of service of such summary invoice(s) (the "Review Period"), the Debtors, the U.S. Trustee, or the Creditors' Committee, as the case may be, shall file and serve upon such professional an objection with the Court (a "Fee Objection") limited to the issue of the reasonableness of the disputed fees and expenses prior to the expiration of the Review Period, (iii) if the Debtors, the U.S. Trustee, or the Creditors' Committee fail to object to the reasonableness of such fees and expenses within the Review Period (or such objection is later withdrawn), any objection of the Debtors, the U.S. Trustee, or the Creditors' Committee, as the case may be, shall be waived, (iv) the Debtors shall timely pay in accordance with this Final Order the undisputed fees and expenses reflected on any invoice to which a Fee Objection has been timely filed, and (v) notwithstanding the foregoing subsections (i)–(iv), the DIP Agent's, DIP Lenders', Prepetition Agent's or Prepetition Secured Parties' costs, fees and expenses, including legal fees and expenses incurred prior to and unpaid as of the Petition Date shall be paid indefeasibly upon entry of this Final Order.

40.     The Debtors will use best efforts to report to the DIP Agent and the Prepetition Agent the fees and expenses of counsel and other advisors for the Debtors, as provided for herein on a bi-weekly basis.  The DIP Agent and Prepetition Agent will use best efforts to report to the Debtors the fees and expenses of counsel and other advisors for the DIP Agent and Prepetition Agent, respectively, on a bi-weekly basis.

**Professional Fees of the Estates; Carve-Out**

41.     Notwithstanding anything to the contrary herein, the Debtors' obligations to the DIP Secured Parties and the Prepetition Agent and Prepetition Lenders, and the liens, security interests and superpriority claims granted by the Interim Order or this Final Order or under the Prepetition Credit Documents and the DIP Documents, and the payment of all such obligations, shall be subject and subordinate in all respects to payment of the following fees and expenses: (a) the payment of unpaid fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (b) fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (c) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, but subject to final allowance by the Court, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals"), and the Creditors' Committee (the "Committee Professionals" and, together with the Debtor Professionals, the "Estate Professionals") at any time before the delivery by the DIP Agent of a Carve-Out Trigger Notice (defined below) and without regard to whether such fees and expenses are provided for in any Approved Budget or were invoiced after the Carve-Out Trigger Notice Date (the amounts set forth in this clause (c) being the "Pre Carve-Out Trigger Notice Cap"); and (d) the Allowed Professional Fees of Debtor Professionals in an aggregate amount not to exceed $4,000,000, after application of all retainers, incurred on or after the first business day following delivery by the DIP Agent of the Carve-Out Trigger Notice (the amount set forth in this clause (d) being the "Debtor Post Carve-Out Trigger Notice Cap"); (e) Allowed Professional Fees of Committee Professionals in an aggregate amount not to exceed $1,000,000 incurred on or after the later of (i) the first business day following delivery by the DIP Agent of the Carve-Out Trigger Notice or (ii) determination of the Court that a Postpetition Default has occurred, after a hearing

41

thereon (the amount set forth in this clause (e) being the "Committee Post Carve-Out Trigger Notice Cap" and together with the Debtor Post Carve-Out Trigger Notice Cap, such amount, the "Post Carve-Out Trigger Notice Cap" and the Pre Carve-Out Trigger Notice Cap together with the Post Carve-Out Trigger Notice Cap and the amounts set forth in clauses (a) and (b), the "Carve-Out Cap") (the foregoing clauses (a) through (e), collectively, the "Carve-Out").  The term "Carve-Out Trigger Notice" shall mean a written notice stating that the Post-Carve-Out Trigger Notice Cap has been invoked, delivered by hard copy or email by the DIP Agent at the direction of the requisite lenders under the DIP Credit Agreement to lead bankruptcy counsel for the Debtors, the U.S. Trustee, Prepetition Secured Parties, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continued existence of a Postpetition Default (as defined herein) under the terms of this Final Order.  The term "Carve-Out Trigger Notice Date" shall mean the day on which a Carve-Out Trigger Notice is received by the Debtors. On the Carve-Out Trigger Notice Date, the Carve-Out Trigger Notice shall constitute a demand to the Debtors to transfer cash in an amount equal to the Carve-Out Cap less any amount then held in the Carve-Out Account (as defined in paragraph 42 below).

42.     Within five (5) business days of the initial funding of the DIP Loans, the Debtors shall fund into a segregated account (the "Carve-Out Account") not subject to the control of the DIP Agent, the Prepetition Agent or any of the DIP Lenders or Prepetition Secured Parties an amount equal to the total budgeted Estate Professional fees for the first two (2) weeks set forth in the Approved Budget and, thereafter the Debtors may transfer into the Carve-Out Account cash on a weekly basis in an amount equal to the estimated Estate Professional fees (excluding, for the avoidance of doubt, any restructuring, sale, success or other transaction fee of any investment bankers or financial advisors) for the next unfunded week set forth in the Approved Budget into

42

the Carve-Out Account. Thereafter, the Debtors shall use such funds held in the Carve-Out Account to pay Estate Professional fees as they become allowed and payable pursuant to interim or final orders from the Court; provided, that the Debtors' obligations to pay the allowed fees and expenses of the Estate Professionals shall not be limited or deemed limited to funds held in the Carve-Out Account.

43. Immediately following receipt of a Carve-Out Trigger Notice, and prior to the payment of any DIP Obligations, the Debtors shall be required to deposit into the Carve-Out Account cash in an amount equal to the difference between the Carve-Out Cap and the balance held in the Carve-Out Account as of the Carve-out Trigger Notice Date. Notwithstanding anything to the contrary herein or in the DIP Documents, following delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Account has been fully funded as permitted above in an amount equal to all obligations benefitting from the Carve-Out. Any payment or reimbursement made to any Estate Professional in respect of any Allowed Professional Fees prior to the delivery of the Carve-Out Trigger Notice shall not reduce the Carve-Out.

44. The amounts in the Carve-Out Account shall be available only to satisfy Allowed Professional Fees and other amounts included in the Carve-Out until such amounts are paid in full. Notwithstanding anything to the contrary herein, (i) the failure of the Carve-Out Account to satisfy in full the amount set forth in the Carve-Out shall not affect the priority of the Carve-Out and (ii) in no way shall the Carve-Out, the Carve-Out Account, or any Approved Budget be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors or that may be allowed by the Court at any time (whether by interim order, final order, or otherwise). All funds in the Carve-Out Account shall be used first to pay all obligations benefitting

from the Pre Carve-Out Trigger Notice Cap, until paid in full, and then the obligations benefitting

from the Post Carve-Out Trigger Notice Cap.  The amount in the Carve-Out Account shall be

reduced on a dollar-for-dollar basis for Allowed Professional Fees that are paid after the delivery

of the Carve-Out Trigger Notice, and the Carve-Out Account shall not be replenished for such

amounts so paid.

45.     Payments from the Carve-Out shall be subject to any terms and conditions of the

engagement agreements and appurtenant orders for the employment of each Estate Professional.

The Debtors shall be permitted to pay compensation and reimbursement of expenses incurred prior

to the occurrence of a Postpetition Default or delivery of a Default Notice to the extent allowed

and payable under sections 330 and 331 of the Bankruptcy Code.

46.     To the extent that professional fees and expenses of the Estate Professionals have

been incurred by the Debtors or the Creditors' Committee at any time before or on the first business

day after delivery by the DIP Agent of a Carve-Out Trigger Notice but have not yet been allowed

by the Court, such professional fees and expenses of the Estate Professionals shall constitute

Allowed Professional Fees benefiting from the Carve-Out upon their allowance by the Court,

whether by interim or final compensation order and whether before or after delivery of the Carve-

Out Trigger Notice, and the Carve-Out Account shall be funded to include such professional fees

and expenses.

47.     Until such time as the DIP Obligations shall have been indefeasibly paid and

satisfied in full in accordance with the DIP Documents, any remaining unapplied retainer funds at

the conclusion of an Estate Professional's engagement shall be immediately returned to the DIP

Agent, as the DIP Lenders' Cash Collateral.  If, after paying all amounts set forth in the definition

of Carve-Out, the Carve-Out Account has not been reduced to zero, all remaining funds in the

Carve-Out Account shall be distributed to the DIP Agent on account of the DIP Loans, unless the DIP Obligations have been indefeasibly paid in full in cash and the DIP Obligations have been terminated.

48.      The DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or expenses of any Estate Professionals incurred in connection with the Chapter 11 Cases or any Successor Case under any chapter of the Bankruptcy Code, regardless of whether payment of such fees or disbursement has been allowed by the Court.  Nothing in this Final Order or otherwise shall be construed to obligate any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties in any way to pay compensation to or reimburse expenses of any Estate Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or expense reimbursement.

## No Marshaling

49.      The DIP Agent, the DIP Secured Parties, the Prepetition Agent and the Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Secured Debt, or the Prepetition Collateral.  Notwithstanding the foregoing or anything to the contrary in the DIP Documents, the Prepetition Credit Documents, or in this Final Order, in the event of an enforcement of remedies in accordance with the terms of this Final Order, solely in connection with Avoidance Actions and/or Avoidance Proceeds, the DIP Secured Parties and the Prepetition Secured Parties shall use commercially reasonable efforts to first satisfy the claims and liens of such parties from applicable collateral other than Avoidance Actions and/or Avoidance Proceeds before seeking to recover from Avoidance Actions and/or Avoidance Proceeds.

## Limitation on Charging Expenses Against Collateral

50.     Without limiting the scope of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from (and the Debtors shall irrevocably waive any such claim to) the DIP Collateral (including Cash Collateral) or Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent (as directed by the requisite lenders under DIP Credit Agreement) and the Prepetition Agent, as applicable, and no consent shall be implied from any other action, inaction or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties, and nothing contained in this Final Order shall be deemed to be a consent by the DIP Secured Parties or the Prepetition Secured Parties to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.  Further, the DIP Agent and the DIP Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Secured Parties, the Prepetition Agent and the Prepetition Lenders with respect to proceeds, products, offspring, or profits of any of the DIP Collateral or Prepetition Collateral.

## Payments Free and Clear

51.     Any and all payments or proceeds remitted to the DIP Agent by, through or on behalf of the Debtors pursuant to the provisions of the Interim Order, this Final Order, the DIP Documents or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by, through, or on behalf of the Debtors.

## No Proofs of Claim

52.     No DIP Secured Party or Prepetition Secured Party shall be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases of the Debtors under any chapter of the Bankruptcy Code, and the Debtors' stipulations in this Final Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s).  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative expense claims and priority claims) in any of the Chapter 11 Cases or Successor Cases shall not apply to the claims of the DIP Secured Parties with respect to the DIP Obligations or to the claims of the Prepetition Secured Parties under the Prepetition Credit Documents. Notwithstanding the foregoing, (a) the DIP Agent (on behalf of itself and the DIP Lenders) is hereby authorized and entitled, in its determination, but not required, to file (and amend and/or supplement, as applicable) a master proof of claim for any claims of the DIP Agent or any of the DIP Lenders in respect of the DIP Obligations, as applicable and (b) the Prepetition Agent (on behalf of itself and the Prepetition Lenders) is hereby authorized and entitled, in its determination, but not required, to file (and amend and/or supplement, as applicable) a master proof of claim for any claims of the Prepetition Agent or any of the Prepetition Lenders under the Prepetition Credit Documents, as applicable; provided, however, that nothing in this Final Order shall waive the right of any DIP Lender or any Prepetition Lender to file its own proof of claim against any of the Debtors.

### Limitations on Use of DIP Facility Proceeds and Collateral

53.     No DIP Loans, DIP Collateral, or any portion of the Carve-Out, may be used directly or indirectly by any Debtor, any statutory, or non-statutory committee (including the Creditors' Committee), or any trustee appointed in the Chapter 11 Cases or any Successor Case, including any chapter 7 case, or any other person, party, or entity (a) in connection with the investigation, initiation, or prosecution of any claims, causes of action, adversary proceedings, or

other litigation (i) against any of the DIP Secured Parties or their respective predecessors in interest, officers, directors, employees, agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, or the Adequate Protection Liens or Adequate Protection 507(b) Claims; or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the DIP Superpriority Claims, or the liens, claims, rights, or security interests granted under the DIP Orders or the DIP Documents including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise (provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans and/or DIP Collateral (including Cash Collateral) may be used by the Creditors' Committee to investigate, but not to prosecute, (x) the claims and liens of the Prepetition Secured Parties and (y) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties, up to an aggregate cap of no more than $100,000 (the "Challenge Budget"); provided, further, that to the extent the Creditors' Committee incurs fees and expenses in an amount in excess of the Challenge Budget, the Debtors, the Prepetition Secured Parties and the DIP Secured Parties agree that the Creditors' Committee may seek payment of such fees as an administrative expense as part of its professionals' fee applications; provided, further, that all parties reserve their right to object to such fees and expenses on the grounds that such fees and expenses were not reasonable (which reasonableness objection cannot be based on the fact that such fees and expenses exceed the Challenge Budget); (b) to prevent, hinder, or otherwise delay the DIP Agent's, or the DIP Lenders', as applicable, enforcement or realization on the DIP Obligations, DIP Superpriority Claims, DIP Collateral, and the liens, claims, and rights granted to such parties under this Final

Order, each in accordance with the DIP Documents or this Final Order; (c) to seek to modify any of the rights and remedies granted to the DIP Agent, or the DIP Lenders under this Final Order or the DIP Documents, as applicable; (d) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant to the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or pari passu with, the DIP Liens, DIP Obligations, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection 507(b) Claims, unless all DIP Obligations and claims granted to the DIP Secured Parties under this Final Order, have been paid in full in cash or as otherwise agreed to in writing by the Required Lenders (as defined in the DIP Credit Agreement); or (e) to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Required Lenders or are otherwise included in the Approved Budget.  The Debtors shall be entitled to use DIP Collateral to pay reasonable and documented fees incurred to (x) contest that a Postpetition Default has occurred and/or is continuing hereunder pursuant to and consistent with paragraph 56 of this Final Order and/or (y) prepare for and participate at any hearing held by the Court regarding any exercise of rights or remedies under the DIP Documents; provided that, in each case, such amount shall apply against the Debtor Post Carve-Out Trigger Notice Cap.

## POSTPETITION DEFAULT/REMEDIES

### Postpetition Defaults

54.    The occurrence of any of the following events, unless waived by the requisite lenders under the DIP Credit Agreement, shall constitute an event of default (each, a "Postpetition Default" and collectively, the "Postpetition Defaults"):  (a) the failure of the Debtors to perform any of the terms, provisions, conditions, covenants, or obligations under this Final Order, (b) the failure of the Debtors to comply with any of the Milestones (as defined below) or (c) the occurrence

of an "Event of Default" under the DIP Credit Agreement. Upon the occurrence and during the continuation of any Postpetition Default that has not been waived by the DIP Secured Parties, as directed by the requisite lenders under the DIP Credit Agreement, the DIP Secured Parties shall have the rights and remedies set forth in the DIP Documents and in this Final Order.

### Remedies

55.    Subject to the terms of the DIP Documents and this Final Order, the automatic stay provisions of section 362 of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Secured Parties to exercise all rights and remedies and to take any or all of the following actions, without further order of or application to the Court, after five (5) Business Days (such period, the "Remedies Notice Period") from the delivery of a written notice of the occurrence and continuance of a Postpetition Default (the "Default Notice") (e-mail being sufficient for this purpose) by the DIP Secured Parties, as directed by the requisite lenders under the DIP Credit Agreement, to the Debtors, their counsel (Sidley Austin LLP), the U.S. Trustee, and counsel to the Creditors' Committee (McDermott, Will & Emery LLP).

56.    The Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing (with the DIP Agent and the DIP Secured Parties deemed to consent to such emergency hearing pursuant to this Final Order) within five (5) Business Days of the issuance of the Default Notice or such other time as the Court can schedule the hearing in accordance with the local rules for the purpose of (i) contesting whether, in fact, a Postpetition Default has occurred and is continuing and/or (ii) obtaining non-consensual use of Cash Collateral, provided that if a request for such hearing is made prior to the end of the Remedies Notice Period, then the Remedies Notice Period shall automatically be continued until the Court hears and rules with respect thereto.

57.    Upon issuance of the Default Notice and prior to the expiration of the Remedies Notice Period, the Debtors (a) may continue to use Cash Collateral and the proceeds of DIP Loans pursuant to the Approved Budget but (b) are prohibited from requesting any further advances under the DIP Facility that are not in the Approved Budget.  Following the expiration of the Remedies Notice Period and during the continuation of any Postpetition Default, the DIP Secured Parties may: (a) terminate, reduce, or restrict the Debtors' use of any Cash Collateral; (b) cease or reduce making any DIP Loans under the DIP Credit Agreement; (c) declare all DIP Obligations to be immediately due and payable; (d) charge the default rate of interest on the DIP Loans; (e) freeze monies or balances in the Debtors' accounts; (f) immediately set-off any and all amounts in accounts maintained by the Debtors and subject to the control of the DIP Secured Parties against the DIP Obligations; (g) otherwise enforce any and all rights against the DIP Collateral in the possession of any of the applicable DIP Secured Parties, including, without limitation, disposition of the DIP Collateral solely for application towards the DIP Obligations; (h) enforce all of the guaranty rights; and (i) take any other actions or exercise any other rights or remedies permitted under the DIP Orders, the DIP Documents or applicable law to effect the repayment of the DIP Obligations.

58.    The automatic stay under section 362 of the Bankruptcy Code otherwise applicable to the DIP Agent and DIP Lenders is hereby modified so that after the Remedies Notice Period the DIP Agent shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Documents and this Final Order, and shall be permitted to satisfy the DIP Liens, the DIP Superiority Claims, the Adequate Protection Liens and Adequate Protection 507(b) Claims, subject only to the Carve-Out and Prepetition Permitted Senior Liens.  Unless the Court during the Remedies Notice Period orders otherwise, the automatic stay shall automatically

be terminated at the end of the Remedies Notice Period without further notice or order, and the

DIP Agent shall be permitted to exercise all remedies set forth herein, in the DIP Documents, and

as otherwise available at law against the DIP Collateral, without further order of or application or

motion to the Court, and without restriction or restraint by any stay under sections 105 or 362 of

the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in

the DIP Collateral or any other rights and remedies granted to the DIP Agent with respect thereto

pursuant to the DIP Documents, the Interim Order or this Final Order.

59.     Upon or after the occurrence of any Postpetition Default, the DIP Agent and the

DIP Lenders may, in their sole determination, consistent with the terms of this Final Order and the

DIP Documents, advance funds to the Debtors or may consent to the Debtors' use of Cash

Collateral, and all such advances or consent to use of Cash Collateral shall not constitute a waiver,

limitation, or modification of the DIP Agent's and the DIP Lenders' rights and remedies pursuant

to the DIP Documents, the Interim Order, this Final Order, and applicable law.

## Milestones

60.     The Debtors agree that failure to comply with any of the milestones (as set forth in

section 7.16 of the DIP Credit Agreement, the "Milestones") shall constitute an Event of Default.

Each of the Milestones may be extended or waived in writing at any time by the DIP Agent, as

directed by the requisite lenders under the DIP Credit Agreement.  The Milestones include:

    i)      the Interim Order shall have been entered by the Court not later than three (3)
business days following the Petition Date;

    ii)     the Debtors shall file a motion or motions seeking approval of sale bidding
procedures with respect to the sale transaction, in form and substance acceptable to
the DIP Agent, not later than fifteen (15) days following the Petition Date;

    iii)    the Debtors shall provide to the DIP Agent (for further transmission to the DIP
Lenders) a confidential information memorandum and proposed list of interested
buyers with respect to the sale transaction not later than thirty (30) days following
the Petition Date;

iv)     the Court shall enter an order approving bid procedures with respect to the sale transaction, in form and substance acceptable to the DIP Agent, not later than forty-five (45) days following the Petition Date;

v)      the Bankruptcy Court shall enter the Final Order not less than forty-five (45) days following the Petition Date;

vi)     the Debtors shall file the plan, the related disclosure statement, and motion for approval of the disclosure statement, each in form and substance acceptable to the DIP Agent, not later than seventy-five (75) days following the Petition Date;

vii)    the Debtors shall receive a qualified bid with respect to the sale transaction (which may be the stalking horse bid) and all such qualified bids received shall be promptly shared with the DIP Agent (for further transmission to the DIP Lenders) not later than 110 days following the Petition Date;

viii)   the Court shall enter an order approving the disclosure statement for the plan and authorizing solicitation of votes for the plan not later than 110 days following the Petition Date;

ix)     the Debtors, in consultation with the DIP Agent, shall select the qualified bidder(s) in connection with the sale transaction not later than 115 days following the Petition Date;

x)      the Debtors, in consultation with the DIP Agent, shall select the qualified bidder(s) and hold an auction(s) among those qualified bidders in connection with the sale transaction to the extent there are multiple qualified bids, in each case not later than 125 days following the Petition Date;

xi)     the Court shall enter an order approving the sale transaction, in form and substance acceptable to the DIP Agent, not later than 135 days following the Petition Date;

xii)    the Court shall enter an order confirming the plan not later than 150 days following the Petition Date; and

xiii)   the effective date of the plan shall occur by not later than 170 days following the Petition Date.

## **Challenge Period**

61.     The Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall be binding upon the Debtors in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall be binding upon all other parties in interest, including, without limitation, the Creditors' Committee

and any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) the Creditors' Committee, such other committee or any other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than seventy-five (75) days from formation date of the Creditors' Committee ("Challenge Period"), (i) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt or the Prepetition Liens, or (ii) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against the Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "Representative" and, collectively, the "Representatives") in connection with matters related to the Prepetition Credit Documents, the Prepetition Secured Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period

shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (1) the Debtors' stipulations, admissions, agreements and releases contained in the DIP Orders shall be binding on all parties in interest; (2) the obligations of the Prepetition Obligors under the Prepetition Credit Documents, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (3) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including the Creditors' Committee and any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party acting or seeking to

55

act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Prepetition Credit Documents, the Prepetition Secured Debt, the Prepetition Liens and the Prepetition Collateral shall be deemed forever waived, released and barred; provided, that the Challenge Budget may be used by the Creditors' Committee in accordance with paragraph 53 of this Final Order.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in the DIP Orders shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee or any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Documents, the Prepetition Secured Debt or the Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any plan of reorganization. Notwithstanding anything contained herein to the contrary, the Challenge Period shall be tolled for the Creditors' Committee if it formally moves for an order of this Court conferring standing or authority (the "Standing Motion") to bring a Challenge prior to the end of the Challenge Period,

from the date the Creditors' Committee so moves until such time as standing is granted or denied (and if granted, for a period of ten (10) business days thereafter) pursuant to an order of the Court with regard to such Standing Motion; provided, that the Creditors' Committee agrees to request an expedited hearing on such Standing Motion from the Court and to take all commercially reasonable steps to have such Standing Motion heard as soon as practicable; provided, further, that the Challenge Period (x) will only be tolled if such Standing Motion attaches a draft complaint identifying the specific Challenge(s) that the Creditors' Committee proposes to assert and the defendant(s) against whom such Challenge(s) are proposed to be asserted, and (y) will only be tolled with respect to such Challenge(s) and defendant(s) specifically identified in such draft complaint, except as further ordered by the Court.

### Right to Credit Bid

62.     The DIP Agent, for itself and for and on behalf of the DIP Lenders, as directed by the requisite lenders under the DIP Credit Agreement, may credit bid (the "Credit Bid Right") any portion and up to the entire amount of the DIP Obligations, at any time on any individual asset, portion of the assets, or all assets constituting their respective Collateral in conjunction with any sale pursuant to section 363 of the Bankruptcy Code.  The DIP Agent, the DIP Lenders, or any special purpose entity created by them, shall be a qualified and permitted bidder in all respects at any auction, and shall not be required to submit a deposit, purchase agreement, or any other deliverable or documentation to the Debtors or their representatives or agents.

### OTHER TERMS

63.     The Debtors and the DIP Agent, as directed by the requisite lenders under the DIP Credit Agreement, are authorized to implement, in accordance with the terms of the DIP Documents, any modifications or amendments to any DIP Document which are not material and adverse to the Debtors.  Any modifications or amendments of any DIP Document which are

material and adverse to the Debtors, the estates, or any secured party shall be subject to prior approval by this Court upon motion by the Debtors, and any party (including the DIP Agent) may seek to have such motion heard on an expedited basis.

64.     The DIP Agent and the DIP Lenders may assign or participate any portion of their DIP Obligations in accordance with and subject to the terms of the DIP Documents; provided, however, that any assignee or participant with respect to DIP Obligations shall be subject to the terms of the DIP Orders.

65.     Other than any Prepetition Permitted Senior Liens and the Carve-Out, no priority claims shall be allowed that are or will be prior to or on parity with the superpriority claims or secured claims of the DIP Agent against the Debtors and their estates arising from the DIP Documents and the DIP Orders.

66.     No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility shall be avoidable or recoverable from the DIP Agent or the DIP Lenders under any section of the Bankruptcy Code, or any other federal, state, or other applicable law.

67.     Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

68.     Except for (i) the sale of assets in the ordinary course of the Debtors' business consistent with the terms of the DIP Credit Agreement and (ii) and as may be provided for in the Approved Budget, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any of the Collateral, except as otherwise permitted by the DIP Documents.

69.     The terms hereunder and under the DIP Documents, the security interests and liens granted to the DIP Agent and Prepetition Agent, for themselves and for and on behalf of the DIP Lenders and Prepetition Lenders, under the DIP Orders, and the rights of the DIP Agent and Prepetition Agent, the DIP Lenders, and Prepetition Lenders pursuant to the DIP Orders with respect to the Collateral, and treatment of the Prepetition Lenders' Claim and DIP Obligations shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtors without the prior written approval of the DIP Agent, as directed by the requisite lenders under the DIP Credit Agreement.  The DIP Obligations provided herein shall not be discharged (and the Debtors hereby waive any rights to seek any such discharge) by the entry of an order confirming any plan in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash on or before the effective date of such confirmed plan or each of the DIP Secured Parties, as applicable, has agreed in writing to such other treatment.

70.     The terms and provisions of this Final Order, as well as the priorities in payment, liens, and security interests granted pursuant to the Interim Order, this Final Order and the DIP Documents, shall continue in this or any Successor Case of the Debtors, and such priorities in payment, liens, and security interests shall maintain their priority as provided by the DIP Orders until such time as the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the DIP Documents and the DIP Agent shall have no further obligation or financial accommodation to the Debtors.

71.     The provisions of this Final Order shall inure to the benefit of the Debtors, the DIP Agent, Prepetition Agent, DIP Lenders, and Prepetition Lenders, and they shall be binding upon (a) the Debtors and their successors and assigns, including any trustee or other fiduciary hereafter

appointed as legal representative of the Debtors or with respect to property of the estates of the

Debtors, whether under chapter 11 of the Bankruptcy Code, any confirmed plan, or any subsequent

chapter 7 case, and (b) all creditors of the Debtors and other parties in interest.

72.     Chubb Reservation of Rights.  For the avoidance of doubt, (i) to the extent ACE

American Insurance Company and/or any of its U.S.-based affiliates (collectively, together with

each of their successors, and solely in their roles as insurers, "Chubb") has Prepetition Permitted

Senior Liens in property (or the proceeds thereof) owned by the Debtors as collateral to secure

obligations under any insurance policies and related agreements (the "Chubb Collateral"), Chubb's

Prepetition Permitted Senior Liens in the Chubb Collateral shall be senior to any liens and/or

security interests granted pursuant to this Final Order; (ii) nothing in this Final Order or any

document related thereto, including the DIP Documents, alters or modifies the terms and

conditions of any insurance policies or related agreements issued by Chubb; and (iii) the insurance

policies issued by Chubb and the rights and claims thereunder shall be subject to the liens granted

pursuant to this Final Order solely to the extent permitted under applicable non-bankruptcy law;

and (iv) the proceeds of any insurance policy issued by Chubb shall be considered to be DIP

Collateral solely to the extent such proceeds are payable to the Debtors or the Debtors' estates (as

opposed to third-party claimants) pursuant to the terms of any such applicable insurance policy,

including as amended or supplemented by applicable endorsements; provided, however, that to the

extent any claim arises that is covered by any insurance policies issued by Chubb, the Debtors and

any applicable insured party may pursue such claim in accordance with the terms of such insurance

policies, and, if applicable, the Debtors may turn over to the DIP Agent, for the benefit of itself

and the DIP Secured Parties, any such insurance proceeds (each, a "Proceed Turnover"), provided,

further, however, that Chubb shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover except pursuant to further order of the Court.

73.     If any or all of the provisions of this Final Order are hereafter modified, vacated, or stayed without the prior written agreement of the DIP Agent as directed by the requisite lenders under the DIP Credit Agreement, such modification, vacation, or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtors to the DIP Agent, Prepetition Agent, DIP Lenders, and Prepetition Lenders before the effective date of such modification, vacation, or stay or (b) the validity or enforceability of any security interest, lien, priority or other protection authorized, granted, or created hereby or pursuant to any of the DIP Documents or Prepetition Credit Documents.  Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtors to the DIP Agent for itself or for and on behalf of the DIP Lenders or the Prepetition Agent for itself or for and on behalf of the Prepetition Lenders, as applicable, before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Agent and the Prepetition Agent for themselves and for and on behalf of the DIP Lenders or Prepetition Lenders, as applicable, shall be entitled to all the liens, rights, remedies, privileges, and benefits granted herein and pursuant to the DIP Documents and Prepetition Credit Documents with respect to all such indebtedness, obligations, or liabilities.

74.     To the extent the terms and conditions of the DIP Documents or Prepetition Credit Documents are in express conflict (as opposed to being additive, limiting, or more specific than this Final Order) with the terms and conditions of this Final Order, the terms and conditions of this Final Order shall control.

75.    No approval, agreement, or consent requested of the DIP Agent by the Debtors pursuant to the terms of this Final Order or otherwise shall be inferred from any action, inaction, or acquiescence of the DIP Agent other than a writing acceptable to the DIP Agent, as directed by the requisite lenders under the DIP Credit Agreement, that is signed by the DIP Agent and expressly shows such approval, agreement or consent, without limitation (other than as expressly set forth in this Final Order, including with respect to approval of the Proposed Budget). Nothing herein shall in any way affect the rights of the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Lenders as to any non-Debtor entity, without limitation.

76.    Nothing herein shall be deemed or construed to waive, limit, or modify the rights of the DIP Agent and the Prepetition Agent for themselves and for and on behalf of the DIP Lenders and the Prepetition Lenders, to obtain further adequate protection and other statutory protections for the use of the Collateral, including Cash Collateral, or to seek other relief in these Chapter 11 Cases or any Successor Cases in accordance with any provision of the Bankruptcy Code or applicable law.

77.    Unless expressly and specifically provided otherwise herein, nothing herein shall be deemed or construed to waive, limit, modify or prejudice the claims, rights, protections, privileges and defenses of the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Lenders afforded pursuant to the Bankruptcy Code.

78.    This Final Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Court, and may be relied upon by the DIP Agent, the Prepetition Agent, the DIP Lenders, the Prepetition Lenders and the Debtors without the necessity of entry into the docket sheet of these Chapter 11 Cases. To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

79.     This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the Court under the Bankruptcy Code, to enforce the terms of this Final Order and to adjudicate any and all disputes in connection therewith by motion and without necessity of an adversary proceeding.

80.     All headings in this Final Order are descriptive and for reference only, and do not have separate meaning or change any terms therein.

## NOTICE

81.     The Debtors' proposed counsel shall serve this Final Order on all of the following parties: (a) the proposed Complex Service List (as defined in the Creditor Matrix Motion (as defined in the First Day Declaration); (b) the Cash Management Banks (as defined in the First Day Declaration); (c) any holder of a Prepetition Permitted Senior Liens (to the extent known by the Debtors); and (d) the Creditors' Committee.

## RESERVATION OF RIGHTS

82.     To the extent of any inconsistencies between the terms of this Final Order and the findings of fact and conclusions of law made by the Court at the Final Hearing or the terms stated on the record on which the Court granted interim approval of the DIP Facility at the Final Hearing (collectively, the "Final Rulings"), the Final Rulings shall control.

83.     THIS ORDER IS EFFECTIVE IMMEDIATELY.

# # # END OF ORDER # # #

Order submitted by:

**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Jeri Leigh Miller (24102176)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:      (214) 981-3300
Facsimile:      (214) 981-3400
Email:          tom.califano@sidley.com
                rpatel@sidley.com
                jeri.miller@sidley.com

*and*

Andres Barajas (*pro hac vice* pending)
Weiru Fang (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:      (212) 839-5300
Facsimile:      (212) 839-5599
Email:          andres.barajas@sidley.com
                weiru.fang@sidley.com

*Proposed Attorneys for the Debtors
and Debtors in Possession*