SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Jeri Leigh Miller (24102176)
Parker G. Embry (24126826)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400
Email:         tom.califano@sidley.com
               rpatel@sidley.com
               jeri.miller@sidley.com
               parker.embry@sidley.com

SIDLEY AUSTIN LLP
Andres Barajas (admitted *pro hac vice*)
Weiru Fang (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:     (212) 839-5599
Email:         andres.barajas@sidley.com
               weiru.fang@sidley.com

*Attorneys for the Debtors*
*and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>EBIX, INC., *et al.*[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 23-80004 (SWE)<br><br>(Jointly Administered) |

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ebix, Inc. (1975), Vertex, Incorporated (6295), P.B. Systems, Inc. (9074), Ebix Consulting, Inc. (6666), Ebix US, LLC (N/A), Facts Services, Inc. (1348), Doctors Exchange, Inc. (N/A), Ebix International LLC (N/A), Agency Solutions.com, LLC d/b/a Health Connect LLC (N/A), ConfirmNet Corporation (2737), A.D.A.M., Inc. (8070), and Ebix Latin America, LLC (N/A). The Debtors' mailing address is 1 Ebix Way, Johns Creek, Georgia 30097.

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO USE NA L&A NET SALE PROCEEDS
TO PAY PREPETITION SECURED CLAIMS, (II) MODIFYING THE AUTOMATIC
STAY IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txnb.uscourts.gov no more than twenty-four (24) days after the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk and filed on the docket no more than twenty-four (24) days after the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on the matters set forth in this motion on April 22, 2024, at 9:30 a.m. (prevailing Central Time) in Courtroom #3, 14th Floor, Earle Cabell Federal Building, 1100 Commerce Street, Suite 1254, Dallas, Texas 75242.**
>
> **Parties who will be offering evidence or participating in examination need to make in person appearances in the courtroom. All other interested parties may make their appearance via Cisco Webex. Audio communication will be by use of the Court's dial-in facility. You may access the facility at 1.650.479.3207. The meeting code is 476 420 189. Video communication will be by the use of the Cisco WebEx platform. Connect via the Cisco WebEx application or click the link on Judge Everett's home page. Click the settings icon in the upper right corner and enter your name under the personal information setting. WebEx hearing instructions may be obtained from Judge Everett's hearing/calendar site: https://www.txnb.uscourts.gov/judges-info/hearing-dates/judge-everetts-hearing-dates .**
>
> **Hearing appearances must be made electronically in advance of electronic hearings. To make your appearance, click the "Electronic Appearance" link on Judge Everett's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Ebix, Inc. and its debtor affiliates as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases submit this motion (this "Motion") for an entry of an order, substantially in the form attached hereto as Exhibit A, (the "Proposed Order") authorizing (i) the Debtors to use the NA L&A Net Sale Proceeds to pay the Prepetition Lenders (each as defined below), (ii) modifying the automatic stay in connection therewith, and (iii) granting related relief. In support of this Motion, the Debtors submit the *Declaration of Peter D. Fitzsimmons in Support of the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Use NA L&A Net Sale Proceeds to Pay Prepetition Secured Claims, (II) Modifying the Automatic Stay in Connection Therewith, and (III) Granting Related Relief*, attached hereto as Exhibit B (the "Fitzsimmons Declaration"). In further support of this Motion, the Debtors respectfully state as follows:

2

**PRELIMINARY STATEMENT**

1. Immediately prior to the filing of these chapter 11 cases, the Debtors entered into a restructuring support agreement (the "RSA") with their Prepetition Lenders, which is intended to form the basis for a consensual plan process. The Debtors expect the sale of the North American Life and Annuity assets (the "NA L&A Assets," and such sale, the "NA L&A Sale")—which was approved by this Court on February 16, 2024—to close on or about April 1, 2024. By this Motion, the Debtors agree to pay the net proceeds of the NA L&A Sale (the "NA L&A Net Sale Proceeds") (less the amount of debtor in possession financing outstanding and the cash collateral reserve described herein) to the Prepetition Lenders on account of their secured claim in the assets sold. The Debtors believe the relief requested is warranted for the following reasons:

- the Creditors' Committee (as defined below) has conducted its investigation of the Prepetition Lenders' claims, the challenge period has run, and no challenge has been brought;

- the payment will be sufficient to pay off the outstanding DIP obligations (inclusive of the $70 million roll up) and will stop the accrual of interest thereon;

- the payment will allow for a significant paydown of the Prepetition Lenders' secured prepetition claims, thus reducing the accrual of interest thereon; and

- the Debtors have negotiated a $25,000,000 cash collateral carve-out from the NA L&A Net Sale Proceeds to fund ongoing administrative expenses, should the remaining DIP availability prove insufficient.

2. On March 29, 2024, the Debtors and the Prepetition Agent agreed to the terms of the first amendment to the RSA (the "Amended RSA"), which, importantly, provides the Debtors, among other concessions, with (i) the ability to pursue multiple paths with the blessing of their Prepetition Lenders, including the ability to pursue a reorganization transaction that could include a debt or equity financing transaction, (ii) continued forbearance by the Prepetition

3

Lenders against certain of the Debtors' non-Debtor foreign subsidiaries which are guarantors on the Prepetition Credit Agreement (as defined below) and whose equity were pledged to the Prepetition Lenders, and (iii) agreement by the Prepetition Lenders to consensually set aside $25 million from the NA L&A Net Sale Proceeds which may be subject to use as cash collateral in these chapter 11 cases, subject to and in accordance with the Final DIP Order (as defined below) and/or Section 363 of the Bankruptcy Code, as applicable, on such terms and conditions to be agreed upon by the Debtors and the Prepetition Agent. In exchange for these and other significant concessions, the Debtors have agreed to seek approval for a partial paydown of the existing Prepetition Secured Claims from the NA L&A Net Sale Proceeds.

3. Given that partial paydown of the Prepetition Secured Claims is a matter of timing rather than right, and the benefits to the Debtors' estates, the Debtors believe that the relief requested is in the best interest of stakeholders and should be approved.

## JURISDICTION AND VENUE

4. The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

5. The legal predicates for the relief requested herein are sections 105(a), 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4

6. The Debtors confirm their consent to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

I.  **General Background**

7. Ebix, Inc., along with its affiliated debtors and debtors-in-possession, is a leading international provider of a variety of technology services, focusing on the insurance, financial services, travel, and healthcare industries. The Debtors' main focus is to design and deploy a wide variety of insurance and reinsurance exchanges on an on-demand basis using software-as-a-service enterprise solutions in areas of customer relationship management, front-end and back-end systems, and outsourced administrative and risk compliance.

8. On December 17, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. These chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly. The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. On January 3, 2024, the Office of the United States Trustee established the Official Committee of Unsecured Creditors (the "Creditors' Committee").

9. Additional information regarding the Debtors' business, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Amit K. Garg, Chief Financial Officer of Ebix, Inc., in Support of the Debtors' Chapter 11 Petitions and First*

*Day Motions* [Docket No. 16] (the "First Day Declaration"), and incorporated herein by reference.

**II. The RSA**

10. On the Petition Date, the Debtors and certain non-Debtor affiliates entered into the RSA with the Prepetition Lenders under the Prepetition Credit Agreement (collectively, the "Prepetition Lenders") and the Prepetition Agent. Pursuant to the RSA, the Debtors agreed to undertake certain "Restructuring Transactions," which the RSA defines as:

> (a) a jointly administered plan of reorganization (the "Plan") and (b) a sale or sales of the Debtors' North American Life and Annuity assets (the "NA L&A Assets") or, to the extent the proceeds of the sale of the NA L&A Assets are not sufficient to pay the Prepetition Lenders in full, the sale of such of the Debtors' other assets as is necessary to fund the Restructuring Transactions contemplated herein and to pay all Prepetition Secured Claims[2] in full (the "Sale Transaction(s)") pursuant to a sale process or processes to be approved in the Chapter 11 Cases to be filed by the Debtors."

*See* RSA, Recitals.

11. Beginning in February 2024, the Debtors and the Prepetition Agent began discussing a path forward for the balance of the case. On March 29, 2024, the Debtors entered into the Amended RSA, a copy of which is attached as Exhibit 1 to the Fitzsimmons Declaration.

12. The Prepetition Lenders have bargained for an interim distribution through a partial paydown of their Prepetition Secured Claims. The Debtors have agreed to the terms of the Amended RSA, including for the partial paydown of the Prepetition Secured Claims from the NA L&A Net Sale Proceeds, in light of the benefits derived therefrom.

---

[2] As defined in the RSA, "Prepetition Secured Claims" means any claim arising under the Prepetition Credit Agreement and all related security agreements, collateral agreements, pledge agreements, control agreements, guarantees and other documents (including, without limitation, any notes, guarantees, collateral documents, amendments, and fee letters entered into in connection therewith) (including the loans outstanding under the Prepetition Credit Agreement), which, for the avoidance of doubt, shall include any accrued and unpaid interest and fees, whether accrued prepetition or postpetition.

**III.    The NA L&A Sale**

13.    On December 18, 2023, the Debtors filed a bidding procedures motion [Docket No. 43] (the "L&A Bid Procedures Motion") approving, among other things, the Debtors' bid procedures and entry into the asset purchase agreement with Zinnia Distributor Solutions LLC (the "Stalking Horse Purchaser," and such asset purchase agreement, the "Stalking Horse APA"). On January 18, 2024, the Court approved the L&A Bid Procedures Motion. *See* Docket No. 199.

14.    On February 10, 2024, the Debtors filed a notice cancelling the auction for the Debtors' NA L&A Assets and designating the Stalking Horse Purchaser as the successful bidder of the NA L&A Assets. *See* Docket No. 309.

15.    On February 16, 2024, the Court entered an order approving the NA L&A Sale (the "Sale Order") to the Stalking Horse Purchaser for a purchase price of approximately $386.5 million, subject to the terms and conditions in the Stalking Horse APA.[3] The Sale Order provides:

> Upon the receipt of the proceeds of the Sale Transaction by the Debtors, but after such proceeds have been applied in accordance with the DIP Documents (as defined in the *Final Order (I) Authorizing (A) Postpetition Financing, and (B) The Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to Prepetition Lenders; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 255] ("Final DIP Order")) the Debtors shall immediately deposit the proceeds in a segregated account with, or subject to a control agreement in favor of, the Prepetition Agent (as defined in the Final DIP Order), or in such other account as the Prepetition Agent may agree. The net cash proceeds received by the Debtors on account of the NA L&A Assets constitute Prepetition Collateral (as defined in the Final DIP Order) subject in all respects to the terms of, the Final DIP Order and the DIP Documents (as defined in the Final DIP Order). Notwithstanding anything to the contrary in this Order, all parties' rights as to allocation of (i) the proceeds of the Sale Transaction and (ii) any amounts payable from the proceeds of the Sale Transaction and timing thereof are

---

[3] The Purchase Price is subject to further adjustments until the closing of the NA L&A Sale pursuant to terms of the Stalking Horse APA.

fully reserved in accordance with the APA, the DIP Documents (as defined in the Final DIP Order) and the Prepetition Credit Documents (as defined in the Final DIP Order).

See Sale Order, ¶ 10.

16. The Debtors anticipate that the NA L&A Sale will close on or around April 1, 2024.

**IV.    The Prepetition Credit Facility**

17. The Debtors are party to that certain Prepetition Credit Agreement, dated as of August 5, 2014 (the "Prepetition Credit Agreement," and such facility, the "Prepetition Credit Facility") by and among (a) Ebix, Inc., as borrower, (b) Regions Bank, as administrative agent and collateral agent (the "Prepetition Agent"), (c) the other Debtors and certain non-Debtor affiliates, and (d) the lenders party thereto from time to time (the "Prepetition Lenders"), as amended, modified, and restated from time to time.[4]  As set forth in the First Day Declaration, as of the Petition Date, the aggregate principal amount outstanding under the Prepetition Credit Facility was approximately $617 million, which amount consisted of: (a) approximately $172 million of the outstanding principal amount of Term Loans (as defined in the Prepetition Credit Agreement); and (b) approximately $445 million of the outstanding principal amount of Revolving Loans (as defined in the Prepetition Credit Agreement).  In addition, as of the Petition Date, interest and amendment fees had accrued in the aggregate amount of approximately $36 million.

18. Under the Prepetition Credit Agreement, interest on the unpaid principal amounts of the Term Loans and Revolving Loans accrue at Base Rate or Term SOFR plus the Applicable

---

[4] As more fully described in the First Day Declaration, the Prepetition Credit Agreement has been amended multiple times since its inception.

8

Margin (each as defined in the Prepetition Credit Agreement).[5] Default interest accrues under the Prepetition Credit Agreement at an interest rate equal to (i) the Base Rate plus (ii) the Applicable Margin applicable to Base Rate Loans (as defined in the Prepetition Credit Agreement) plus (iii) 2% per annum.[6]

19. Obligations under the Prepetition Credit Facility are secured by a first priority lien on substantially all of the Debtors' assets, subject to customary exceptions and exclusions set forth in the applicable credit documents, and are guaranteed by non-Debtor affiliates Ebix International Holdings Limited (Ebix, Inc.'s direct subsidiary) and Ebix Singapore Pte Ltd (Ebix International Holdings Limited's direct subsidiary).

**V.     DIP Facility**

20. Importantly, pursuant to the Final DIP Order, the Debtors have admitted, stipulated, and agreed to, among other things, the validity and amount of the Prepetition Secured Claims, as well as the validity, perfection, and priority of the Prepetition Lenders' liens on substantially all of the Debtors' property. Final DIP Order ¶ E. The challenge period under the Final DIP Order expired on March 18, 2024, without any challenge being filed. See Final DIP Order ¶ 61. Accordingly, such stipulations, admissions, agreements, and releases contained in the Final DIP Order are now binding upon all parties in interest.

21. The Debtors entered into that certain *Senior Secured Superpriority Debtor-in-Possession Term Loan Credit Agreement*, dated December 19, 2023 (the "DIP Credit Agreement," and such facility, the "DIP Facility"), as amended on March 29, 2024 and as further amended, modified, or restated from time to time, with the lenders party thereto (the "DIP

---

[5] The summary of the Prepetition Credit Agreement herein is qualified by the terms of the Prepetition Credit Agreement.

[6] In connection with the forbearance agreement entered into on September 29, 2023, the Debtors agreed that past-due obligations would accrue at the default rate provided for in the Prepetition Credit Agreement.

9

Lenders") and Regions Bank, as administrative agent and collateral agent (the "DIP Agent"). On January 26, 2024, the Court approved entry into the DIP Credit Agreement on a final basis, including the roll-up of $70 million of prepetition indebtedness into DIP obligations. As of the date hereof, the Debtors have borrowed, in addition to the roll-up, approximately $23 million in New Money DIP Loans (as defined in the Final DIP Order) under the DIP Facility.

22. The DIP Credit Agreement contains a mandatory prepayment provision whereby the Debtors are obligated to prepay the obligations under the DIP Credit Agreement from the Net Cash Proceeds of any Sale Transaction on the Business Day following receipt thereof (each as defined in the DIP Credit Agreement). *See* DIP Credit Agreement, ¶ 2.11(c)(viii), 2.12. At the time of filing this Motion, the Debtors anticipate making such prepayment in accordance with the DIP Credit Agreement and the Final DIP Order.

## BASIS FOR RELIEF

**I.    Partial Payment of the Prepetition Secured Claim Is Justified and Should Be Approved.**

23. The Court may authorize the Debtors to partially pay the Prepetition Secured Claims from the NA L&A Net Sale Proceeds pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 105(a) provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper for the purpose of preserving and protecting the debtor's estate. *See Chiasson v. J. Louis Matherne & Assocs.* (*In re Oxford Mgmt., Inc.*), 4 F.3d 1329, 1334 (5th Cir. 1993) ("The powers granted by that statute must be exercised in a manner that is consistent with the Bankruptcy

Code."); *FiberTower Network Servs. Corp. v. FCC* (*In re FiberTower Network Servs. Corp.*), 482 B.R. 169, 182 (Bankr. N.D. Tex. 2012) (quoting *Bear v. Coben* (*In re Golden Plan of Cal., Inc.*), 829 F. 2d 705, 713 (9th Cir. 1986)).

24. Section 363(b) provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Fifth Circuit has held that section 363(b) requires a debtor to articulate a "business justification for using, selling, or leasing the property outside of the ordinary course of business." *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *see also In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (use of assets outside the ordinary course of business permitted if "sound business purpose justifies such actions"); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

25. Further, courts routinely authorize debtors to pay prepetition secured claims outside of a plan of reorganization under section 363(b). *See In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 511-12 (Bankr. D. Del. 2010) (listing examples of different contexts where secured claims are often paid prior to a plan and noting that "secured creditors are often paid in connection with a sale of all or substantially all of a debtor's assets under section 363 of the Bankruptcy Code"); *In re Energy Future Holding Corp.*, 527 B.R. 157, 169 (D. Del. 2015), *aff'd*

11

*sub nom. In re Energy Future Holdings Corp.*, 648 F. App'x 277 (3d Cir. 2016) (approving settlement that involved debtors' payment of prepetition secured claims before confirmation of chapter 11 plan); *see also In re Claar Cellars LLC*, No. 20-00044-WLH11, 2020 WL 1238924, at *7 (Bankr. E.D. Wash. Mar. 13, 2020) (approving use of cash collateral to pay prepetition secured claim prior to a chapter 11 plan confirmation). Bankruptcy Courts have approved similar relief in other cases. *See*, *e.g.*, *In re Waypoint Leasing Holdings Ltd.*, Case No. 18-13648 (SMB) (Bankr. S.D.N.Y. Feb. 15, 2019) [Docket No. 444] ("Upon Closing and, with respect to the Supporting WAC Lenders, subject to the terms and conditions of the Plan & Asset Sale Support Agreement, the Debtors shall make a partial distribution to the Affected Participating Lenders, in full and final satisfaction and release of that portion of such Affected Participating Lenders' claims in an amount equal to such Affected Participating Lenders' allocable share of net proceeds"); *In re Katy Indus.*, 2017 Bankr. LEXIS 3942, *37 (Bankr. D. Del. June 19, 2017) ("[t]he proceeds of the Sale shall be paid on the Closing Date over to the Debtors and applied in accordance with the Final Cash Collateral Order and Final DIP Order and, then, otherwise distributed in accordance with the priorities set forth in the Bankruptcy Code. On and after the Closing Date, payments applied to the 'Prepetition Debt' (as defined in the Final Cash Collateral Order) shall be final"); *In re Great Lakes Comnet, Inc.,* 569 B.R. 693, 697 (Bankr. W.D. Mich. June 2, 2017) ("[secured lender] will be paid the net Sale Proceeds at Closing on account of the Postpetition Loans and Prepetition Debt").

26.     Here, the partial payment of the Prepetition Secured Claims is a sound exercise of the Debtors' business judgment and justified under the Court's equitable powers because the partial payment significantly advances the Debtors' chapter 11 objectives of maximizing value for all stakeholders. *First,* the partial payment of the Prepetition Secured Claims will provide for

interest savings under the Prepetition Credit Agreement of approximately $14.3 million.[7] *Second*, the Debtors have negotiated for $25 million to be set aside in a segregated cash collateral account, which prevents all of the sale proceeds from leaving the Debtors' estates and which may be subject to use as cash collateral on such terms and conditions to be agreed upon by the Debtors and the Prepetition Agent, should the remaining DIP Facility availability prove insufficient. *Third,* a partial paydown of the Prepetition Secured Claims would only affect timing of payment to the Prepetition Lenders and not the Prepetition Lenders' right to such proceeds, given that there now is no dispute that the NA L&A Assets are Prepetition Collateral and the Prepetition Lenders' liens attach to the net cash proceeds received by the Debtors on account of the NA L&A Assets. *See* Sale Order, ¶ 8 ("This Order: (i) is and shall be effective as a determination that other than Assumed Liabilities or as otherwise provided in the APA, upon the Closing, all Interests of any kind or nature whatsoever existing as to the NA L&A Assets have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected, *with such Interests and liens attaching in order of priority, with the same validity, enforceability, security, and perfection which they have now against such NA L&A Assets*"); ¶ 10 (stating that the "net cash proceeds received by the Debtors on account of the NA L&A Assets constitute Prepetition Collateral (as defined in the Final DIP Order) . . . .") (emphasis added). As such, partial paydown of the Prepetition Secured Claims is a result contemplated by the general scheme of the Bankruptcy Code and would be within the Court's equitable powers.

27. Notably, no harm to any other creditor is risked by the partial payment of the Prepetition Secured Claims because the Prepetition Lenders already have a secured claim that

---

[7] Inclusive of interest savings from paydown of obligations under the DIP Credit Agreement and assumes an emergence in early July 2024.

must be repaid ahead of unsecured creditors and the concessions provided by the Prepetition Lenders will inure to the benefit of such unsecured creditors. *See In re Claar Cellars LLC*, 2020 WL 1238924, at *7 (authorizing debtor to use cash collateral under section 363(b) to pay prepetition claim of secured creditor "because those interim distributions advance significant bankruptcy objectives without causing material (or perhaps any) harm to any other creditor.").

## II. Cause Exists to Modify the Automatic Stay to Effectuate the Relief Requested.

28. Section 362(a) of the Bankruptcy Code operates to stay any act to obtain possession of property from the estate, or to exercise control over property of the estate. 11 U.S.C. § 362(a). However, section 362(d)(1) permits a bankruptcy court, upon request, to modify or terminate the automatic stay for "cause." 11 U.S.C. § 362(d)(1). Certain courts have suggested that, absent court authority, application of sale proceeds to prepetition debt would be a violation of the automatic stay. *See, e.g., Hull v. Cenlar FSB (In re Gistic)*, 2020 Bankr. LEXIS 10, *24 (Bankr. D. Maine Jan. 3, 2020) (holding that there existed a plausible claim for a violation of the automatic stay when the defendants applied sale proceeds to prepetition debt); *Gordon v. Taylor (In re Taylor)*, 430 B.R. 305, 313 (Bankr. N.D. Ga. 2010) (concluding that creditor violated stay under section 362(a)(6) by applying postpetition payment to prepetition loan); *Krivohlavek v. Boys Town Fed. Credit Union (In re Krivohlavek)*, 405 B.R. 312, 316 (B.A.P. 8th Cir. 2009) (concluding that creditor's application of funds to payment of debt constituted an act to collect a debt prohibited by section 362(a)(6)).

29. As noted by the *Capmark* court, secured creditors are often paid in connection with a sale of all or substantially all of a debtor's assets under section 363 of the Bankruptcy Court and that a sale of assets under section 363 can be thought of as nothing more than conversion of assets from a "going concern" to cash. *In re Capmark Fin. Grp. Inc.*, 438 B.R. at 512. After such a conversion or "liquidation" of a debtor's assets, "one can argue that a motion

for stay relief would almost certainly be granted to allow the secured creditor to proceed against the cash." *Id.* The *Capmark* court further noted that "[r]ather than requiring the filing of a stay relief motion, the order approving the sale often allows for the immediate payment of all or part of the secured creditor's claim." *Id.*

30. The Debtors seek authority under section 362(d) of the Bankruptcy Code to modify the automatic stay solely to the extent necessary to permit the partial paydown of the Prepetition Secured Claims. As noted above, the Prepetition Lenders have liens that attach to the proceeds of the NA L&A Sale and, therefore, the Prepetition Lenders are secured creditors entitled to the NA L&A Net Sale Proceeds. For the articulated reasons, the Debtors submit that the relief requested herein—including the modification of the automatic stay—is warranted and justified by the facts and circumstances of these chapter 11 cases.

## WAIVER OF BANKRUPTCY RULES 4001(A)(3), 6004(A) AND 6004(H)

31. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rules 4001(a)(3) and 6004(h), which is necessary to implement the relief requested in this Motion.

## RESERVATION OF RIGHTS

32. Nothing contained herein or any action taken pursuant to relief requested is intended to be or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any party in interest's rights to dispute any claim or interest on any grounds; (c) a promise or requirement to pay any claim; (d) a waiver of

15

the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested in this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (f) a request for or approval to assume, adopt, or reject any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim.

## NOTICE

33.     Notice of this Motion has been provided by email, facsimile, or first class mail to the Complex Service List [Docket No. 406].  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and granting such other relief as is just and proper.

Dated: March 29, 2024
Dallas, Texas

/s/ *Thomas R. Califano*
**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Jeri Leigh Miller (24102176)
Parker G. Embry (24126826)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:   (214) 981-3300
Facsimile:   (214) 981-3400
Email:   tom.califano@sidley.com
    rpatel@sidley.com
    jeri.miller@sidley.com
    parker.embry@sidley.com

*and*

Andres Barajas (admitted *pro hac vice*)
Weiru Fang (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:   (212) 839-5300
Facsimile:   (212) 839-5599
Email:   andres.barajas@sidley.com
    weiru.fang@sidley.com

*Attorneys for the Debtors*
*and Debtors in Possession*

## Certificate of Service

I certify that on March 29, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Thomas R. Califano*
Thomas R. Califano