Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(214) 767-8967

Meredyth A. Kippes
for the United States Trustee
meredyth.kippes@usdoj.gov

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No.    23-80004-swe11** |
| | § | **Chapter 11** |
| **Ebix, Inc., et al.[1],** | § | **(Jointly Administered)** |
| | § | |
| ***Debtors.*** | § | |

### UNITED STATES TRUSTEE'S OBJECTION TO
### CONFIRMATION OF  FIRST AMENDED JOINT CHAPTER 11
### PLAN OF EBIX INC. AND ITS DEBTOR AFFILIATES

TO THE HONORABLE SCOTT W. EVERETT,
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for Region 6 (the "United States Trustee"),

files this objection (the "Objection") to confirmation of the *First Amended Joint Chapter 11 Plan*

*of Ebix Inc. and its Debtor Affiliates* [ECF No. 693] (the "Amended Plan"). In support, the

United States Trustee would show:

### SUMMARY

The United States Trustee objects to confirmation of the Amended Plan for the following

reasons:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ebix, Inc. (1975), Vertex, Incorporated (6295), P.B. Systems, Inc. (9074), Ebix Consulting, Inc. (6666), Ebix US, LLC (N/A), Facts Services, Inc. (1348), Doctors Exchange, Inc. (N/A), Ebix International LLC (N/A), Agency Solutions.com, LLC d/b/a Health Connect LLC (N/A), ConfirmNet Corporation (2737), A.D.A.M, Inc. (8070), and Ebix Latin America, LLC (N/A). The Debtors' mailing address is 1 Ebix Way, Johns Creek, Georgia 30097.

  i.  Nonconsensual plan releases of non-debtor third parties by non-debtor third parties are not authorized under the United States Bankruptcy Code.

  ii.  The opt-out provisions in the ballots and the non-voting status notice are ineffective to confer consent to the Third-Party Release.

  iii.  The Amended Plan's exculpation provision is too broad and violates Fifth Circuit authority.

  iv.  To the extent the Debtors liquidate under the Amended Plan, a discharge under section 1141(d) is inappropriate.

  v.  The Amended Plan should clarify that claims of governmental entities are not released.

  vi.  The Amended Plan should clarify that all post-confirmation entities will be obligated to file post-confirmation operating reports and pay post-confirmation statutory fees.

## **FACTUAL ALLEGATIONS**

### **The Disclosure Statement and Solicitation**

1.  On March 22, 2024, the Debtors filed their initial joint plan of reorganization [ECF No. 467], initial disclosure statement [ECF No. 468], and the Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Forms of Ballots and Notices in Connection with the Confirmation of the Plan, (III) Scheduling Certain Dates with Respect Thereto, and (IV) Granting Related Relief (the "Solicitation Procedures Motion") [ECF No. 466].

2.  The United States Trustee filed an objection to the initial joint plan of reorganization on June 14, 2024 [ECF No. 641]. This Objection replaces and supersedes that objection.

3.  The Solicitation Procedures Motion was initially set for hearing on June 22, 2024, but was continued to June 27, 2024, upon motion and order.

4.      The Debtor filed a version of the Amended Plan [ECF No. 686] and a version of the amended disclosure statement [ECF No. 687] on June 26, 2024.

5.      On June 27, 2024, the Court heard the Solicitation Procedures Motion.  All parties' rights to object to the Amended Plan terms were reserved for confirmation.

6.      The Court entered the Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Forms of Ballots and Notices in Connection with Confirmation of the Plan, (III) Scheduling Certain Dates with Respect There to, and (IV) Granting Related Relief (the "Solicitation Order") [ECF No. 696] on June 27, 2024.

7.      The Debtor filed solicitation versions of the Amended Plan and the amended disclosure statement [ECF No. 694] on June 27, 2024.

8.      The Solicitation Order approved the following solicitation and confirmation timeline:

| Event | Date |
|---|---|
| Voting Record Date | June 27, 2024 |
| Service of Confirmation Hearing Notice | June 29, 2024 |
| Solicitation Deadline | June 29, 2024 |
| Publication Deadline | July 1, 2024 |
| Plan Supplement Deadline | July 16, 2024 |
| Voting Deadline | July 25, 2024 at 4:00 p.m. CT |
| Opt-Out Deadline | July 25, 2024 at 4:00 p.m. CT |
| Plan Objection Deadline | July 25, 2024 at 4:00 p.m. CT |
| Confirmation Materials Deadline | July 29, 2024 |

9. The hearing on confirmation of the Amended Plan is set for July 30, 2024, at 1:30 pm Central Time.

10. The Solicitation Order also approved the form of notice of the confirmation hearing, the forms of ballots for voting classes (the "Ballots"), the form of non-voting status notice (the "Non-Voting Notice"), all of which contain the Plan language describing the discharge, injunctions, exculpations, and releases contained in the Amended Plan. The Ballots and the Non-Voting Notice also contain opt-out provisions relating to the Third-Party Release[2] giving those creditors the opportunity to opt out of granting the Third-Party Release.

11. Parties receiving the Non-Voting Notice did not receive the full solicitation package; however, the Non-Voting Notice provided information to Non-Voting Notice recipients regarding how to obtain copies of the solicitation package, including the Amended Plan.

**Certain Terms of the Amended Plan**

### *Plan Implementation*

12. The Amended Plan is a "toggle plan," under which the Debtors will either (i) reorganize with an infusion of new money from the Plan Sponsor or, (ii) if the reorganization option cannot be accomplished, pursue the Non-L&A Sale, the proceeds of which will be distributed according to the Amended Plan. The Non-L&A Sale option also provides that the Debtors will pursue additional transactions with regard to the Debtors' remaining assets. *See* Amended Plan, Article IV.

13. The Amended Plan does not seek to substantively consolidate the Debtors. *See* Amended Plan Article IV.A.

### *Classification of Claims and Interests*

14. Article III.A. of the Amended Plan classifies Claims and Interests as follows:

---

[2] Unless otherwise indicated herein, capitalized terms shall have the meaning ascribed to them in the Amended Plan.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Prepetition Secured Lender Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |

| Class 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
|---|---|---|---|
| Class 6 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

### *Statutory Fees and Post-Confirmation Operating Reports*

15.     Article XII.D. of the Amended Plan provides as follows with regard to statutory

fees and post-confirmation operating reports:

**D.      Payment of Statutory Fees**

All fees payable to the U.S. Trustee under 28 U.S.C. § 1930(a)(6) (including interest under 31 U.S.C. § 3717) as of the Confirmation Date will be paid on the Effective Date or as soon as reasonably practicable thereafter.  Notwithstanding anything to the contrary in the Plan, such fees are not subject to an allowance procedure under 11 U.S.C. § 503(b), nor is the U.S. Trustee required to file a request for payment of such fees.

Following confirmation, the Debtors shall pay quarterly fees to the U.S. Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6) (including interest under 31 U.S.C. § 3717).  Quarterly fees shall be payable for any case that is reopened.  So long as the Debtors are required to make these payments, the Debtors shall file with the Court quarterly reports in the form specified by the U.S. Trustee for that purpose.

### *Governing Law*

16.    Article XII.L. of the Amended Plan provides that the governing law for the Amended Plan, unless Federal law applies or unless otherwise specifically stated, is the laws of the State of Texas.

### *Discharge*

17.    Article VIII.A. of the Amended Plan provides that the Debtors shall receive a discharge under section 1141(d) of the Bankruptcy Code.

### *Third Party Release*

18.    Article VIII.C.2. of the Amended Plan provides for a third-party release, subject to opt-out, as follows:

**2.    Release by Third Parties**

**Except as otherwise expressly provided in this Plan, effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by each of the Released Parties, the adequacy and sufficiency of which is hereby confirmed, and without limiting or otherwise modifying the scope of the Debtor Release provided by the Debtor Releasing Parties above, all other Releasing Parties will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to each of the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Releasing Parties) (the "Third Party Release") from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, whether directly or derivatively held, existing as of the Effective Date or thereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to any of (i) the Debtors, the Chapter 11 Cases, the Reorganization Transactions, the Non-L&A Bid Procedures, the L&A Bid Procedures, the L&A Sale, the Non-L&A Sales, the Litigation Trust, the L&A Sale Order, the Non-L&A Sale Order, the DIP Documents, the Disclosure Statement, the Plan (including the Plan Supplement), the**

PSA, and the RSA, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, (iii) the business or contractual arrangements between any Debtor and any Released Parties, (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Transaction Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Claim or Interest of the Debtors or the Post-Effective Date Debtors, and/or (vii) the Confirmation or Consummation of this Plan or the solicitation of votes on this Plan that such Releasing Party would have been legally entitled to assert (whether individually or collectively); *provided*, *however*, that the foregoing provisions of this Third Party Release shall not operate to waive, release or otherwise impair:  (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Court or any other court of competent jurisdiction; (ii) any of the indebtedness and obligations of the Debtors and/or the Post-Effective Date Debtors incurred under the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Court; (iii) the rights of such Releasing Party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan or assumed under the Plan or assumed under Final Order of the Court; and/or (iv) any objections with respect to any Professional's final fee application or Professional Claims in these Chapter 11 Cases.

The foregoing release shall be effective as of the Effective Date without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Third Party Release.

Entry of the Confirmation Order shall constitute the Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Court's finding that the Third Party Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Third Party Release; (iii) in the best interest of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; and (v) given and made after due notice and opportunity for hearing.

*[This space left blank intentionally.]*

19.     Article I.A of the Amended Plan defines "Released Parties" as follows:

"Released Party" and, collectively, the "Released Parties" means each of the following, in each case in their capacity as such (unless such Entity is a Non-Released Party): (a) the Debtors; (b) the Non-Debtor Guarantors, in the event the Debtors consummate the Reorganization Transactions; (c) the Post-Effective Date Debtors; (d) the DIP Secured Parties; (e) the Prepetition Secured Lender Parties; (f) the Creditors' Committee and each of its members; (g) in the event the Debtors consummate the Reorganization Transactions, the Plan Sponsor and its members; and (h) with respect to each of the foregoing entities in clauses (a) through (g), such Entities' Related Persons, in each case, solely in their capacity as such; *provided* that any Holder of a Claim or Interest that affirmatively opts out of the releases provided by the Plan shall not be a "Released Party"; *provided*, *further*, that, solely in the event the Debtors consummate the Reorganization Transactions, the Released Parties shall include Mr. Robin Raina and the Debtors' officers and management, and that in the event of the Non-L&A Sales, such parties shall be Non-Released Parties.  The Released Parties shall not include any of the Non-Released Parties.

20.     Article I.A. of the Amended Plan defines "Related Parties" as follows:

"Related Persons" means, with respect to any Person, such Person's predecessors, successors, assigns, and present and former Affiliates (whether by operation of law or otherwise) and each of their respective subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members and managing members), managers, managed accounts or funds, management companies, fund advisors, advisory board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the Petition Date, and any Person claiming by or through any of them, including such Related Persons' respective heirs, executors, estates, servants, and nominees.

21.     Article I.A. of the Amended Plan defines "Releasing Parties" as follows:

"Releasing Parties" means, collectively, the following, in each case in their capacity as such unless noted otherwise:  (a) each Debtor; (b) the Non-Debtor Guarantors, in the event the Debtors consummate the Reorganization Transactions; (c) each Post-Effective Date Debtor; (d) the DIP Secured Parties; (e) the Prepetition Secured Lender Parties; (f) all Holders of Claims or Interests that vote to accept the Plan; (g) in the event the Debtors consummate the Reorganization Transactions, the Plan Sponsor and its members; (h) all Holders of Claims or Interests that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided in the Plan; (i) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (j) all Holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not affirmatively opt out of the releases provided in the Plan; (k) the Creditors' Committee and its members, each in their capacities as such; and (l) each Related Person of each Entity in clause (a) through clause (k) solely to the extent such Related Persons may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through clause (k); *provided* that, in each case, an Entity shall not be a Releasing Party if it (x) elects to opt out of the Third Party Release; or (y) timely objects

to the Third Party Release through a formal objection Filed on the docket of the Chapter 11 Cases that is not resolved before Confirmation.

### *Waiver of Statutory Limitations on Releases*

22.     Article VIII.D. of the Amended Plan provides that each Releasing Party "waives any and all rights conferred upon it by statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist its favor at the time of providing the release, which if known by it may have materially affected its settlement with the Released Party."  Neither the Ballots nor the Non-Voting Notice contain the language set forth in Article VIII.D of the Amended Plan.

### *Exculpation*

23.     Article VIII.E. of the Amended Plan provides for Exculpation of Exculpated Parties as follows:

**E.      Exculpation**

**To the fullest extent permitted by applicable law, no Exculpated Party will either have or incur any liability to any Person or Entity for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action related to any act or omission in connection with, (i) the Debtors, the Chapter 11 Cases, the Reorganization Transactions, the Non-L&A Bid Procedures, the L&A Bid Procedures, the L&A Sale, the Non-L&A Sales, the Litigation Trust, the L&A Sale Order, the Non-L&A Sale Order, the DIP Documents, the Disclosure Statement, the Plan (including the Plan Supplement), the PSA, and the RSA, (ii) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, (iii) the business or contractual arrangements between any Debtor and any Exculpated Parties, (iv) the negotiation, formulation or preparation of this Plan, the Disclosure Statement, the Transaction Documents, or related agreements, instruments or other documents, (v) the restructuring of Claims or Interests prior to or during the Chapter 11 Cases, (vi) the purchase, sale, or rescission of the purchase or sale of any Claim or Interest of the Debtors or the Post-Effective Date Debtors, and/or (vii) the Confirmation or Consummation of this Plan or the solicitation of votes on this Plan that such Person or Entity would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Interest or other Entity would have been legally entitled to assert for, or on behalf or in the name of, any Debtor, its respective Estate or any Post-Effective Date Debtor (whether directly or derivatively) against any of the Exculpated Parties, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The foregoing shall not be deemed to release, affect, or limit any post-Effective Date rights or obligations of the Exculpated Parties under the Plan, or any other document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement).**

      **The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

      **The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

24.    Article I.A. of the Amended Plan defines "Exculpated Parties" as follows:

      "<u>Exculpated Parties</u>" means, collectively, and in each case in their capacity as such: (a) the Debtors; (b) the Debtors' Board of Directors; (c) the Debtors' Professionals; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacity as such (f) the DIP Secured Parties; (g) the Prepetition Secured Parties; (h) the advisors to the DIP Agent and Prepetition Agent; (i) the Plan Sponsor; and (j) the members of the Plan Sponsor.

### *<u>Gatekeeping Provision</u>*

25.    Article VIII.J. sets forth a gatekeeping provision that would require any claim or cause of action against the Debtors, the Post-Effective Date Debtors, the Litigation Trustee, the Exculpated Parties, or the Released Parties to be presented first to this Court to determine that it is a colorable claim and to obtain this Court's authorization to move forward.

## OBJECTION

### The Third Party Release

#### *<u>Nonconsensual plan releases of non-debtor third parties by non-debtor third parties are not authorized under the United States Bankruptcy Code.</u>*

26.    Nonconsensual third-party releases are not authorized under the United States Bankruptcy Code. *In re Harrinton V. Purdue Pharma, L.P.*, 144 S.Ct. 2071, 2082-88 (2024).

27.    This has long been the conclusion held by the Fifth Circuit Court of Appeals. *See Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 252 (5th Cir. 2009) (observing that prior Fifth Circuit authority "seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions") ("*Pacific Lumber*").

**_Opt-out provisions are insufficient to confer consent to a third party release._**

28.     Contract principles govern whether a release is consensual.  *In re SunEdison, Inc*., 576 B.R. 453, 458 (S.D.N.Y. Bankr. 2017) ("*SunEdison*").  This is because a third-party release is essentially a settlement between a non-debtor claimant and another non-debtor.  The "general rule of contracts is that silence cannot manifest consent." *Patterson et al. v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 686 (E.D. Va. 2022) ("*Mahwah*").  "Most courts allow consensual nondebtor releases to be included in a plan. . . that are specific in language, integral to the plan, a condition of the settlement, and given for consideration." *In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 775-76 (Bankr. N.D. Tex. 2007).

29.     The *Mahwah* court, in applying black letter contract principles to opt-out releases in a chapter 11 plan, found that contract law does not support consent by failure to opt-out. *Mahwah, 636 B.R. at 686.*  "Whether the Court labels these 'nonconsensual' or based on 'implied consent' matters not, because in either case there is a lack of sufficient affirmation of consent." *Id.* at 688.

30.     Conspicuous warnings in the disclosure statement, on the plan ballots, or on an opt-out form that silence or inaction will constitute consent to a release are not sufficient to convert a creditor's silence into consent to the release.  *SunEdison*, 576 B.R. at 458-61.  In *SunEdison*, the debtors argued that the warning in the disclosure statement and on the ballots regarding the potential effect of silence gave rise to a duty to speak, and the non-voting creditors' failure to object to the plan or to reject the plan should be deemed their consent to the release. *Id*. at 460.  The court rejected this argument because the debtors failed to show that the nonvoting creditors' silence was misleading or that the nonvoting creditors' silence signified their intention to consent to the release (finding that silence could easily be attributable to other

causes).  *Id*.  The debtors did not contend that an ongoing course of conduct between themselves

and the nonvoting creditors gave rise to a duty to speak.  *Id*.

31.     "Charging all inactive creditors with full knowledge of the scope and implications

of the proposed third-party releases, and implying a 'consent' to the third-party releases based on

the creditors' inaction, is simply not realistic or fair and would stretch the meaning of 'consent'

beyond the breaking point."  *In re Chassix Holdings, Inc.*, 533 B.R. 64, 88 (Bankr. S.D.N.Y.

2015). Moreover, the court in *SunEdison* observed that parties who are solicited, but do not vote,

may have failed to vote for reasons other than an intention to assent to the releases.  *SunEdison*,

576 B.R. at 461.   As the *Emerge Energy Services, LP* court noted, "A party's receipt of a notice

imposing an artificial opt-out requirement, the recipient's *possible* understanding of the meaning

and ramifications of such notice, and the recipient's failure to opt-out simply do not qualify" as

waiver through a party's silence or inaction. *In re Emerge Energy Servs. LP*, No. 19-11563

(KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019).

32.     This Court has addressed whether opt-outs are effective to confer consent in the

context of a motion to enforce a confirmation order and third party releases.[3]  *See In re 4 West

Holdings, Inc.*, Transcript of Proceedings Before the Honorable Scott W. Everett held on

October 18, 2022 on Motion to Enforce Confirmation Order and Releases and Injunctions

Thereunder, Case No. 18-30777-SWE-11, United States Bankruptcy Court for the Northern

District of Texas, Docket Entry No. 2086 (the "4 West Transcript").

33.     With regard to a third-party release that contained the language "effective as of

the Effective Date, to the fullest extent permitted by law"—language identical to language in the

Third Party Release in this case—this Court founds that there had not been "a determination,

---

[3] As this Court noted in 4 West Holdings, Inc., there are conflicting cases concerning the effectiveness of opt-out
releases.  *See* 4 West Transcript, p. 3 at ln. 17-19.  This Court further noted that no other bankruptcy judge in the
Northern District of Texas have written on the issue.  *See* 4 West Transcript, p. 6 at ln. 14-16.

either in the confirmation order or since, on whether in fact the opt-out releases are permitted by applicable law." *See* 4 West Transcript, pp. 5-6 at ln.19-2. *See also* 4 West Transcript, p. 13 at ln. 22-23.

34.     This Court noted that, as in the present case, the *4 West Holdings, Inc*. plan was governed by the laws of the State of Texas. *See* 4 West Transcript, p. 6 at ln. 21-22. This Court determined that since "there are no Federal Bankruptcy Rules or Federal Civil Rules that govern whether or not somebody can assent through silence to a deemed release" the Court must look to Texas law to determine whether opt-out provisions are effective to confer consent to a third-party release.

35.     This Court reaffirmed that, in the Fifth Circuit, "[n]onconsensual releases are not permitted." *See* 4 West Transcript, p. 14 at ln. 4 to 10. Next, like the Court in *SunEdison*, this Court raised *sua sponte* the issue of whether failure to opt out is effective to grant consent to a third-party release. *See* 4 West Transcript p. 17 at ln. 15 to 20. Like in *SunEdison*, this Court looked to relevant state law—here, the laws of the State of Texas—to determine whether silence in the face of an offer in contract constitutes consent. *See* 4 West Transcript, p. 17-18, ln. 21 to 7. This Court found that silence does not equal consent under Texas contract law and that none of the three exceptions to that principle—that assent to contract is supported by the parties' course of conduct, that assent to contract arises where the offeree accepts the benefit of the offer, and that assent to contract where the offeree misleads the offeror that the offeree, by remaining silent, intends to accept the offer—apply to the opt out provision before this Court. *See* 4 West Transcript, pp. 18-19 at ln. 23 to 21. This Court explained with regard to the third exception that "the exception does not apply absent some element of deception or dishonestly." See 4 West Transcript, p. 19 at ln. 18-19.

36.     This Court also rejected the notion that failing to opt-out from a third-party release is akin to a default under a complaint, failure to file a proof of claim timely, or failure to respond to a claim objection.  "All of those examples involve specific Bankruptcy or Federal Civil Rules that permit affirmative relief to be taken against a party if they fail to act.  Here, there are no comparable rules allowing a deemed assent or consent to a contractual release through silence."  *See* 4 West Transcript, pp. 20-21 at ln. 23-14.  This Court also rejected silence as consent to Article I final adjudication of a matter by a bankruptcy court because such consent must be "knowing and voluntary."  4 West Transcript, pp. 21-22 at ln. 25-18.

### ***The laws of the State of Texas have long held that silence does not confer consent in contract, except in limited circumstances not applicable here.***

37.     The Amended Plan provides that the construction and enforcement of the Amended Plan is governed by the laws of the State of Texas.  *See* Amended Plan, Article XII.L.

38.     The laws of the State of Texas have long held that silence does not equal consent except under limited circumstances not applicable in this case.  *See Texas Ass'n of Ctys. Cty. Gov't Risk Mgmt. Pool v. Matagorda Cty.*, 52 S.W.3d 128, 132-33 (Tex. 2000).  Further, the Commission of Appeals of Texas stated that:

> A contract implied in fact is one in which, under the circumstances, the acts of the parties are such as to indicate according to the ordinary course of dealing and the common understanding of men a mutual intention to contract, as where one accepts the tendered service of another under circumstances justifying the inference that such other expected to be paid for such services. Of course, in implied contracts as well as express contracts there must be shown the element of mutual agreement. But the only difference is that such agreement is expressly stated, in the one instance, and is inferred from the circumstances, in the other. A contract implied from the facts and circumstances in evidence is as binding as would be an expressed one.

*Marr-Piper Co. v. Bullis*, 1 S.W.2d 572, 575 (Tex. Comm. App. 1928, judgment adopted).

39.     Silence and inaction, however, will generally not be deemed assent to an offer because, with silence, there is generally no meeting of the minds. *Matagorda Cty.*, 52 S.W.3d at 132-33 (quoting 2 Williston on Contracts § 6:49 (4th ed. 1991)). "[A]s a matter of law, when a party is unilaterally informed of [a contract term], 'mere failure to object within a reasonable time . . ., without more, could not establish an agreement between the parties.'" *In re Couture Hotel Corporation*, 554 B.R. 369, 381 (Bankr. N.D. Tex. 2016) (quoting *Triton Oil and Gas Corp. v. Marine Contractors and Supply, Inc.*, 665 S.W. 2d 443, 445 (Tex. 1982)). "'[A] meeting of the minds is an essential element of an implied in fact contract.'" *Id*. (quoting *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 49 (Tex. 2008)).

### *The opt-out provisions in the Ballot and the Non-Voting Notice are insufficient to confer consent to the Third Party Release.*

40.     The failure of a party to opt out of the Third-Party Release is not consent to the Third-Party Release. As the *SunEdison* court, the *Chassix* court, and this Court in *4 West Holdings, Inc*. observed, there may be myriad reasons that a party may be inactive in a bankruptcy case. Construing a failure to return an opt-out form as affirmative consent cuts against Texas law of contracts.

41.     Like in *4 West Holdings, Inc*. and in *SunEdison* (applying the contract laws of New York, which are similar to Texas's contract laws), none of the three exceptions to silence as consent apply here. There is no course of conduct between the Debtors and their creditors that would imply consent to the Third-Party Release. And while the creditors may accept payments under the Amended Plan, should it be confirmed, they would receive those payments whether or not they opted out of the Third-Party Release. Accordingly, mere acceptance of payments under

a plan is not the silent acceptance of the benefit of the "bargain" of the Third-Party Release sufficient to confer consent.

42.     With regard to misleading conduct, the *SunEdison* debtors argued that the warning in the disclosure statement and on the ballots regarding the potential effect of silence gave rise to a duty to speak, and the nonvoting creditors' failure to object to the plan or to reject the plan should be deemed their consent to the release. *SunEdison*, 576 B.R. at 460. The *SunEdison* court rejected this argument because the debtors failed to show that the nonvoting creditors' silence was misleading or that the nonvoting creditors' silence signified their intention to consent to the release (finding that silence could easily be attributable to other causes). *Id*. As set forth *supra*, this Court came to a similar conclusion in *4 West Holdings, Inc.*

43.     Further, the provisions of Amended Plan Article XIII.D., Waiver of Statutory Limitations on Releases, were not included in the Ballot and on the Non-Voting Notice. Those receiving Non-Voting Notices did not receive the full solicitation package. While information concerning how to obtain a copy of the Amended Disclosure Statement, the Amended Plan, and the Plan Supplement was provided on the Non-Voting Status Notice, any party receiving a Non-Voting Status Notice would have to take affirmative action to obtain those documents in order to be able to read the language in Article XIII.D. in order to know that they were "expressly [waiving] any and all rights conferred upon [them] by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect exist in [the claimant's] favor at the time of providing the release, which if known by [the claimant] may have materially affected its settlement with the Released Parties." Accordingly, the parties who received the Non-Voting Notice were not on notice of this waiver of their rights. This Court in *4 West Holdings, Inc.* similarly expressed concern about lack of notice. *See* 4 West Transcript, p.

16 at ln. 2-7 (noting that there was no evidence that the debtors in that case gave notice to the creditor of the bankruptcy filing, the plan and the ballot).

### *The Court should strike the Third Party Release unless affirmative consent can be shown.*

44.    Accordingly, because failure to opt out of the Third-Party Release is ineffective to confer consent to the Third Party Release, the Court should strike the Third Party Release unless the Debtors can show affirmative consent by any purported "Releasing Party."

### The Exculpation provision is too broad and violates Fifth Circuit authority.

45.    The Fifth Circuit affirmed that, in accordance with *Bank of New York Trust Company, NA v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)* 584 F.3d 229 (5th Cir. 2009), and section 524(e) of the Bankruptcy Code, "any exculpation in a Chapter 11 reorganization plan be limited to the debtor, the creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties . . . ." *In re Highland Cap. Mgmt., L.P.,* 48 F.4th at 437 (5th Cir. 2022).

46.    Specifically, the Fifth Circuit in *Highland Capital* analyzed whether the independent directors who were specifically appointed to act together as the bankruptcy trustee could be exculpated and concluded:

> That leaves one remaining question:  whether the bankruptcy court can exculpate the Independent Directors under *Pacific Lumber*.  We answer in the affirmative. As the bankruptcy court's governance order clarified, nontraditional as it may be, the Independent Directors were appointed to act together as the bankruptcy trustee for Highland Capital.  Like a debtor-in-possession, the Independent Directors are entitled to all the rights and powers of a trustee.  *See* 11 U.S.C. § 1107(a); 7 COLLIER ON BANKRUPTCY ¶ 1101.01.  It follows that the Independent Directors are entitled to the limited qualified immunity for any actions short of gross negligence.  *See In re Hilal,* 534 F.3d at 501.  Under this unique governance structure, the bankruptcy court legally exculpated the Independent Directors.

> *In re Highland Cap. Mgmt., L.P.,* 48 F.4th at 437.

47.     The Fifth Circuit in *Highland Capital* also rejected any exculpation for reorganized debtors and professionals holding:

> As it stands, the Plan's exculpation provision extends to Highland Capital and its employees and *CEO*; Strand; the Reorganized Debtor and HCMLP GP LLC; the Independent Directors; the Committee and its members; the Claimant Trust, its trustee, and the members of its Oversight Board; the Litigation Sub-Trust and its trustee; professionals retained by the Highland Capital and the Committee in this case; and all "Related Persons." *Consistent with § 524(e), we strike all exculpated parties from the Plan except Highland Capital, the Committee and its members, and the Independent Directors.*
>
> *In re Highland Cap. Mgmt., L.P.,* 48 F.4th at 438 (emphasis added).

48.     While the Amended Plan contains a gatekeeping provision as contemplated by *Highland*, the list of Exculpated Parties goes beyond what *Highland* says is permissible. Highland does not include in its list of permissible exculpated parties the Debtor's board of directors, the Debtor's professionals, the DIP Secured Parties, the Prepetition Secured Parties, the Advisors to the DIP Agent and Prepetition Agent, the Plan Sponsor, or the members of the Plan Sponsor. *See* Amended Plan Article I.A. (defining "Exculpated Parties").[4]

49.     Accordingly, the Exculpation should be tailored to comport with the Fifth Circuit's direction in *Highland*.

## To the extent the Debtors liquidate under the Amended Plan, a discharge under section 1141(d) is improper.

50.     To the extent the Debtors toggle to the Non-L&A Sale option under the Amended Plan and liquidate, the Debtors would not be entitled to a discharge under section 1141(d)(3). Section 1141(d)(3) of the Bankruptcy Code provides that confirmation of a plan does not

---

[4] Furthermore, the release and exculpation of estate professionals is unnecessary because they are protected by fee review under section 330 of the Bankruptcy Code, under which the Court evaluates the reasonableness of a professional's services, including whether such services were necessary to the administration of the estate or beneficial at the time the services were rendered. The Fifth Circuit has held that a final award of professional fees is *res judicata* as to professional malpractice claims. *Osherow v. Ernst & Young (In re Intelogic Trace, Inc.),* 200 F.3d 382, 387-88 (5th Cir. 2000).

discharge a debtor if the plan provides for liquidation of all or substantially all of the property of the estate; the debtor does not engage in business after consummation of the plan; and the debtor would be denied a discharge under section 727(a).  The Court should not grant a discharge to the Debtors under the plan in accordance with section 1141(d)(3) of the Bankruptcy Code.

51.     Accordingly, to the extent that the Debtors liquidate under the Amended Plan, a discharge is improper.

**The Amended Plan should clarify whether claims of governmental entities are released.**

52.     The "police and regulatory power" exception to the automatic stay found at 11 U.S.C. § 362(b)(4) is designed to ensure that the stay "does not impede government's ability to protect public health and safety." *In re Wyly*, 526 B.R. 194, 198 (Bankr. N.D. Tex. 2015).

53.     The Debtors should modify the Amended Plan to clarify that no party shall be released from any causes of action or proceedings brought by any governmental entity in accordance with its regulatory functions, including but not limited to criminal and environmental matters.  The United States Trustee requests that the Debtors include the following language in the Plan:

> Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority

whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

**The Amended Plan should clarify that all post-confirmation entities will be obligated to file postconfirmation operating reports and pay postconfirmation statutory fees.**

54.     Plan language cannot excuse the statutory duty to pay quarterly fees under 28 U.S.C. §1930(a)(6).   Numerous courts have held that a debtor's successor in interest is responsible for payment of quarterly fees.  *In re A.H. Robins Co*., 219 B.R. at 145; *see also, In re Atna Resources, Inc*., 576 B.R. at 214; CSC Industries, Inc., 226 B.R. at 402. *See also, Law v. Siegel*, 571 U.S. 415 (2014) (11 U.S.C. § 105(a) does not allow a bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code).

55.     Article XII.D of the Amended Plan states that the Debtors will remain obligated to pay post-confirmation statutory fees and will file post-confirmation reports.  The Amended Plan should further clarify that all post-confirmation entities, including the reorganized debtors and any liquidating trust created under the Amended Plan, will also be obligated to pay post-confirmation statutory fees and file post-confirmation reports.

Wherefore, the United States Trustee respectfully requests that the Court deny confirmation of the Amended Plan and grant to the United States Trustee such other and further relief as is just and proper.

*[This space left blank intentionally.]*

DATED: July 25, 2024

Respectfully submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE

*/s/ Meredyth A. Kippes*
Meredyth A. Kippes
Trial Attorney
Texas State Bar No. 24007882
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(214) 767-1079
meredyth.kippes@usdoj.gov

**Certificate of Service**

The undersigned counsel certifies that copies of the foregoing document on July 25, 2024 to the parties listed below via email or First Class United States Mail and via ECF to those parties requesting service via ECF in this case.

*/s/ Meredyth A. Kippes*
Meredyth A. Kippes

Ebix, Inc.
Peter D. Fitzsimmons
Amit K. Garg
One Ebix Way,
Johns Creek, Georgia 30097

Thomas R. Califano
Rakhee V. Patel
Jeri Leigh Miller
Sidley Austin LLP
2021 McKinney Ave
Suite 2000
Dallas, Texas 75201
tom.califano@sidley.com
rpatel@sidley.com
jeri.miller@sidley.com

Ameneh Bordi
Weiru Fang
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
abordi@sidley.com
weiru.fang@sidley.com

Charles R. Gibbs
Marcus A. Helt
McDermott Will & Emery LLP
2501 North Harwood Street,
Suite 1900
Dallas, Texas 75201
crgibbs@mwe.com
mhelt@mwe.com

Brian Trust
Sean S. Scott
Mayer Brown LLP
1221 Avenues of the Americas
New York, NY 10020
btrust@mayerbrown.com
stscott@mayerbrown.com